188 So. 867

### FLOYD et al. v. GREEN.

4 Div. 62.

Supreme Court of Alabama.

May 4, 1939.

Rehearing Denied May 25, 1939.

Chauncey Sparks, of Eufaula, and E. W. Norton, of Clayton, for appellants.

44

Crews Johnston, of Clayton, for appellee.

**THOMAS, Justice.**

There is but one issue in this case, and that is, should the deed involved be cancelled or not. If it is cancelled, then the other prayers of the bill, namely, sale of the property and distribution of the proceeds because of the fact that the property cannot be equitably divided, would be granted as of course. It was admitted by the appellees, Mrs. N. E. Green and Sam Caraway that the property cannot be equitably divided, and that the persons named as complainants and respondents below are the ones entitled to a distribution of the proceeds. They further admit that Chauncey Sparks and E. W. Norton have been employed by the complainants below, and that their services are in connection with the whole estate.

The appellants, who are next of kin and beneficiaries under the will of Ann F. Thomas, deceased, filed their bill of complaint, seeking to set aside a deed of conveyance executed by their testatrix, to Mrs. N. E. Green, one of the appellees. It is averred that Mrs. Thomas was a very aged woman, approaching eighty-seven years of age, in very bad physical condition, and of very weak mentality, owing to her enfeebled condition. She was a widow, had no children nor grandchildren, no brothers or sisters, except Mrs. N. E. Green; that she was helpless and unable to look after herself, and while in such condition entered the home of the appellee, Mrs. Green, at the request of the said Ann F. Thomas, who was seeking a home of refuge and rest during the last few days of her life; that she had no mental resistance while in the enfeebled condition both mentally and physically, and while a guest in the home of her said sister, she was imposed upon by the sister and was induced to execute the deed herein referred to, and which was attached as an exhibit to the bill of complaint, for an inadequate consideration and upon the appearance of a gift.

In event of recovery, under the foregoing admissions of fact, the attorneys' fee claimed is within the rule of our recent decisions. Wood et al. v. Amos, 236 Ala. 477, 183 So. 639; Frazer v. First National Bank of Mobile, 235 Ala. 252, 178 So. 441.

The evidence was given by oral examination before the register and not before the court rendering the decree, and therefore, is not supported by the presumption of verity which obtains. Hodge v. Joy, 207 Ala. 198, 92 So. 171; May v. Hillman et al., 237 Ala. 541, 187 So. 864.

In Walling v. Thomas et al., 133 Ala. 426, 430, 31 So. 982, 983, the authorities are collected to the effect that, "A conveyance of lands, obtained for a grossly inadequate consideration, by unfair advantage taken of great mental weakness, though not amounting to absolute incapacity, of the grantor, will, in equity, be set aside, on equitable terms, when application therefor is made seasonably by the grantor, his representatives or heirs. Waddell v. Lanier, 62 Ala. [347] 349; Shipman v. Furniss, 69 Ala. [555] 562, 44 Am.Rep. 528; Burke v. Taylor, 94 Ala. 530, 10 So. 129; Allore v. Jewell, 94 U.S. 506, 24 L.Ed. 260; Harding v. Handy, 11 Wheat. [(U.S.), 103] 125, 6 L.Ed. 429; Raymond v. Wathen, 142 Ind. 367, 41 N.E. 815; 18 Enc.Pl. & Prac., 765, 771. In such case, the deed, being voidable only, and not wholly void, passes title to the grantee, and the heirs' claim to relief rests not on legal succession to the title, but on an equitable right to be invested with such succession. The relief appropriate to be afforded by the courts is by enforcing rescission of the contract of sale, and cancellation of the deed."

To like effect are the recent decisions in this court and in other jurisdictions. Kirby v. Arnold, 191 Ala. 263, 68 So. 17; Pool v. Menefee, 205 Ala. 531, 88 So. 654; Strickland v. Strickland, 206 Ala. 452, 90 So. 345; L.R.A.1916D, 388 note; 2 A.L.R. 432-note; 2 A.L.R. 449-note.

As to just what constitutes undue influence depends on the facts and circumstances of each individual case. Pilcher v. Surles, 202 Ala. 643, 81 So. 585; Barkley v. Boyd, 211 Ala. 50, 99 So. 196.

There are certain principles that are established, illustrated and well stated as follows:

In the case of Hutcheson v. Bibb et al., etc., 142 Ala. 586, 38 So. 754, it is declared:

"* * * 'Undue influence with respect to gifts and conveyances inter vivos is a very different matter. It may exist without either coercion or fraud. It may result entirely from the confidential relation, without activity in the direction of either coercion or fraud, on the part of the beneficiary occupying the position of dominant influence. It is upon him not only to abstain from deceit and duress, but to affirmatively guard the interests of the weaker party, so that their dealing may be upon a plane of equality and at arm's length. To presume undue influence in such a case, therefore, is not to presume fraud or coercion, or any act which is malum in se, but simply the continuance of the influence which naturally inheres in and attaches to the relation itself.' The doctrine is that, in addition to the relations between the testator and the beneficiary under the will, in order to put the burden of upholding the validity of the will upon the beneficiary, when assailed on the ground of undue influence, there must be some evidence of coercion in its execution, or, in other words, that the will is not the will of the testator. This may be done by showing that the person who is the principal or a large beneficiary under the will actively participated in the preparation or execution of the will. McQueen v. Wilson, 131 Ala. 606, 31 So. 94.

"The rule in such cases is based upon grounds of public policy, and was never intended to deprive one of the right of a voluntary and untrammeled disposition of his own property, but rather to guard and protect that right. It is in effect a rule of evidence, putting upon the dominant party in confidential relations, claiming a benefit under the transaction, the burden and duty of rebutting and overcoming the prima facie case so made by the presumptions which the law raises. * * *."

This rule has long prevailed. Justice Goldthwaite said in Boney et al. v. Hollingsworth et al., 23 Ala. 690, 698 and 700, that,

"There is also another, and a very comprehensive class of cases, in which equity looks to the peculiar situation which the parties occupy towards each other, and if one occupies a relation from which an unusual degree of confidence, affection, or sense of duty naturally springs, the utmost degree (uberrima fides) is demanded. —Story's Eq. § 218; and when this relation does exist, says Judge Story, courts of equity acting upon this superinduced ground, in aid of general morals, will not suffer one party, standing in a situation of which he can avail himself against the other, to derive advantage from that circumstance; for it is founded in a breach of confidence.—Story's Eq. § 308.

"* * * taking into consideration the position they occupy towards Mrs. Hollingsworth, we think that proof of the mere execution or ratification of the deed, so far as she is concerned, is not sufficient to sustain it. Until some inducement is shown, the law must always regard with suspicion an act by which a sister divests herself of a valuable interest in favor of a brother. There may be no fraud; everything may be honest and fair; but until the act is satisfactorily accounted for, the inference of fraud, artifice or abuse of confidence, is so strong, that we think equity should always relieve against it.

"In the present case, the ties of affection and confidence resulting from the near relation of the parties, it is reasonable to suppose, were drawn closer by the recent bereavement common to both, and by the fact that the sister was a widow. Unless, therefore, a sufficient inducement is shown, the deed must be set aside as to Mrs. Hollingsworth."

The more recent declaration by this Court in Dowe v. Farley et al., 206 Ala. 421, 423, 90 So. 291, 293 is: "That the son was the dominant party under the evidence in this cause cannot admit of doubt. The burden was upon him to show the transaction was fair, just, and equitable in every respect. It needs no discussion to disclose that this burden has not been discharged. This feature of the decree is therefore free from error."

In Kyle v. Perdue, 95 Ala. 579, 585, 588, 10 So. 103, 104, Mr. Justice Walker, for the Court declared:

"There are well-established rules to be applied in passing upon transactions between persons whose relations are such as to suggest that in dealings between them confidence is reposed and accepted to such an extent that one of them is subject to the influence or ascendency of the other. When such a relationship is shown to exist, if the one who was in a position to exert the influence claims the benefit of a contract with the person bestowing the confidence, the burden is cast upon the former to show affirmatively that the in-

fluence of his position was not unduly exerted; that the utmost good faith was exercised; and that all was fair, open, voluntary, and well understood. This rule as to the burden of proof is of familiar application to contracts by which benefits are conferred by a cestui que trust upon his trustee, by a ward upon his guardian, by a child upon his parent, by a client upon his attorney, by a patient upon his physician, or by any one upon his priest or spiritual advisor. Noble v. Moses, 81 Ala. 530, 1 So. 217 [60 Am.Rep. 175]; Dickinson v. Bradford, 59 Ala. 581 [31 Am.Rep. 23]; Malone v. Kelley, 54 Ala. 532; Boney v. Hollingsworth, 23 Ala. 690; Johnson v. Johnson, 5 Ala. [90], 94; Marx v. McGlynn, 88 N.Y. 357; Huguenin v. Baseley, 2 White & T.Lead.Cas. 1156. The relations here mentioned are but instances in which the principle is applicable. It is not essential that any formal or technical relationship of a fiduciary character has been established between the parties. It suffices that they stand in such a relation to each other that, while it continues, confidence is justifiably reposed by one, and the influence which naturally grows out of that confidence is possessed by the other. * * *

"The testimony of the grantees themselves shows that the grantor never intended to make such a disposition of her property as is embodied in the instrument which she signed. In view of the relations of trust and confidence existing between the parties, and of the evident reliance by the grantor on the false assurances of one of the grantees, an instrument, the provisions of which fall so far short of the grantor's understanding of its operation in her favor, cannot prevail against her impeachment of it. The result is that, accepting the version of the transaction as detailed by the parties who assert its validity, it must, upon their own statements, be pronounced invalid. It is therefore unnecessary to pass upon the conflicts in the testimony upon the issue as to Mrs. Perdue's mental competency at the time she signed the instrument."

We may further observe that there are other principles of law governing the case that may be touched upon as follows. It is not necessary to have fiduciary relations in order to have what the law defines as "confidential relations." In addition to fiduciary relations, this Court has long held that confidential relations arise in cases "in which confidence is reposed and accepted, or influence acquired," and also in "all the variety of relations in which dominion may be exercised by one person over another." Such conditions of confidential relations are defined in many cases from this jurisdiction. Worsham v. Johnson, 231 Ala. 265, 164 So. 381 and authorities there cited; Cox v. Parker, 212 Ala. 35, 101 So. 657; Harraway v. Harraway et al., 136 Ala. 499, 34 So. 836; Kyle et al. v. Purdue et al., 95 Ala. 579, 10 So. 103; Holt v. Agnew et al., 67 Ala. 360; Malone v. Kelley, 54 Ala. 532.

For example, it has been declared that confidential relations exist between brother and sister, sister and sister, and mother and son. Boney et al. v. Hollingsworth et al., 23 Ala. 690 (between brother and sister); Hutcheson v. Bibb et al., 142 Ala. 586, 38 So. 754 (between sisters); Dowe v. Farley et al., 206 Ala. 421, 90 So. 291 (between mother and son); Gibbons et al. v. Gibbons, 205 Ala. 636, 88 So. 833 (between mother and son).

From the foregoing authorities and citations, where confidential relations exist, the burden of proving that the transaction was fair, free from undue influence, fraud or deceit or misrepresentations, and in the case of deeds the grantor, had disinterested, independent and competent advice, is cast upon the beneficiary in such confidential relation. Burke v. Taylor, 94 Ala. 530, 10 So. 129; Worsham v. Johnson, 231 Ala. 265, 164 So. 381; Dowe v. Farley, supra; Gibbons v. Gibbons, supra, Verner et al. v. Mosely, 221 Ala. 36, 127 So. 527; McQueen v. Wilson et al., 131 Ala. 606, 31 So. 94.

In Verner v. Mosely, 221 Ala. 36, 42, 127 So. 527, 532, the rule of the case of McQueen v. Wilson et al., supra, is again produced, and the conclusion in the Verner case is well stated, as follows: "To repeat, in cases such as this: 'The burden rests on the party claiming under the deed, to prove satisfactorily that it is just, fair and equitable in every respect, and not on the party seeking to avoid it to establish that it is fraudulent.' Spiva et al. v. Boyd (206 Ala. 536, 90 So. 289, 290); Burke v. Taylor, 94 Ala. 530, 10 So. 129." [Parenthesis supplied].

It may not be necessary to cite further authorities, but the burden of proof in such a case is stated in Bancroft v. Otis, 91 Ala. 279, 8 So. 286, 288, 24 Am.St.Rep. 904. In

that case the distinction is drawn between the burden of proof in the matter of undue influence in the execution of wills and of deeds. The Court said:

"Where it is made to appear that he has given it away, and that to one who occupies a position of domination in relation to him, the presumption still is that he has not freely deprived himself of it, and its use and enjoyment, but that his act was induced by the undue exercise of the influence which the beneficiary is shown to have had over him; and this presumption must be met by the donee and rebutted, else, in equity, it becomes, as a fact proven, a vitiating factor in the transaction. * *

"Undue influence with respect to gifts and conveyances inter vivos is a very different matter. It may exist without either coercion or fraud. It may result entirely from the confidential relations, without activity in the direction either of coercion or fraud, on the part of the beneficiary occupying the position of dominant influence. It is upon him not only to abstain from deceit and duress, but to affirmatively guard the interests of the weaker party, so that their dealings may be upon a plane of equality, and at arms-length. To presume undue influence in such case, therefore, is not to presume fraud or coercion, or any act which is malum in se, but simply the continuance of the influence which naturally inheres in and attaches to the relation itself."

The question of inadequacy of price or consideration, is not of itself, in general, sufficient to avoid a contract, yet when "coupled with weakness of mind from whatever cause produced, or with pecuniary distress, or circumstances of fraud," it affords a proper subject of relief in equity. The English and American authorities are collected in Kirby v. Arnold, 191 Ala. 263, 68 So. 17, and in Lester v. Mahan, 25 Ala. 445, 60 Am.Dec. 530, and Smith v. Pearson, 24 Ala. 355; Walling v. Thomas, 133 Ala. 426, 31 So. 982.

We have carefully considered the legal evidence contained in the voluminous record given by expert and lay witnesses and have reached the conclusion that Mrs. Green is not entitled to retain the property which she sought to secure by the deed. The setting aside of this conveyance returns her to the condition of the will and codicil and to which only, we believe, she is entitled. It does not seem that the testator,

in less than fifteen days after she had affirmed her intention, as expressed in the will and codicil, to distribute her property equally among her next of kin, should voluntarily prefer to reward one relative over all the rest, in her enfeebled condition of mind and body, unless she was subject to some mental delusion and undue influence growing out of her condition and relation of confidence, which need not be detailed specifically.

When the whole evidence is considered, there are no inferences to the contrary that Mrs. Thomas was weak in mind and body caused by her advanced age and the fatal maladies with which she was afflicted. It necessarily results that she was subject to suggestion and influence however delicately exercised. She was impressed with her necessities and condition and that she would have to go from the hospital. She made a statement in the presence of Mrs. Green and the Martins that she would give what she had to one taking her and caring for her. She feared to go home under her condition of loneliness, disease, pain and impending dissolution or death.

With a full knowledge of all this, Mrs. Green accepted a deed of conveyance to thousands of dollars worth of property and a contract for support and maintenance that was hard upon a consideration of one dollar, love and affection, and the agreement to permit Mrs. Thomas to live with her on provision that the grantor meet all of her expenses.

Otherwise stated, Mrs. Green understood her sister's condition at the hospital and heard her state that she would give all she had to anyone who would take care of her. She did not accept the proposition, however, until she had conferred with her family to ascertain what they thought of it. Then a conveyance and contract were drawn that was hard in condition, Mrs. Green accepting the profits without doing more than the dictates of love and affection from one sister to another would require. She ratified the entire transaction and activities on the part of others exercised in the matter, and resulting in a changed condition from that stated in the will and codicil, to that expressed in the deed and contract. This is sufficient to stamp the transaction as one to be condemned by a court of chancery and the conveyance is set aside.

Aside from the activity of Mrs. Green's children, in seeking information as to the

condition of Mrs. Thomas' mind, the calling of the scrivener and notary, the conveyance being executed, and the attempt to ascertain from R. D. Thomas information as to what side he would take in the effort to strike down or defend the deed and contract, the expert testimony all pointed to the result we here announce. It is unnecessary that the evidence be discussed further in detail. This has been done in magnificent briefs on the part of counsel for appellant and for appellees, and after a careful consideration of it all, we are impressed that the transaction was unjust and should not be supported.

It results from this that the decree of the trial court is in error, and that the same should be set aside, and a decree here rendered pursuant to the prayer of the original bill and as amended.

Reversed, rendered and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.