482 So.2d 274 (1985)
BANK OF RED BAY
v.
Paul D. KING, Diane King, Malcolm King and Jessie King.
Paul D. KING, Diane King, Malcolm King, and Jessie King
v.
BANK OF RED BAY.
84-323, 84-350.
Supreme Court of Alabama.
December 20, 1985.
*275 Bob Rogers of Bedford, Bedford & Rogers, Russellville, for appellant/cross-appellee.
Ernest N. Blasingame, Jr. of Potts, Young, Blasingame & Putnam, Florence, for appellees/cross-appellants.
BEATTY, Justice.
This is a fraud case in which the jury returned a verdict in favor of the plaintiffs/appellees (the Kings) and judgment was entered thereon. The appellant, Bank of Red Bay (the Bank), appeals from the trial court's order denying its post-judgment motion for judgment notwithstanding the verdict or in the alternative a new trial or in the alternative a remittitur. The appellees, Malcolm King, Jessie King, Paul King, and Diane King, cross-appeal, raising only damages issues.
The pertinent facts are as follows:
On July 28, 1980, Robert Winter, joined by his wife Melissa Winter, and Malcolm King,[1] joined by his wife Jessie King, executed a promissory note in favor of the Bank in the amount of $79,925.90 to finance *276 the purchase of the Vina Packing Company. As security for the note, a mortgage on the packing company property was executed in favor of the Bank. As additional security for the note, Malcolm and Jessie King gave the Bank a mortgage on their home and 40 acres of land situated in Colbert County, Alabama.
The Bank's loan officer with whom the Winters and the Kings dealt was Mr. Kelly Moore. At trial, Robert Winter testified that, during the initial financing negotiations, Moore informed him of the existence of some sort of "typographical error" in the legal description of the Vina Packing Company property. The Bank contends this error consists of a typographical or scrivener's error wherein, at some point in the chain of title, the symbol for "minutes" as used in a metes and bounds description was misinterpreted as the symbol for "feet." For example, rather than the metes and bounds description reading "South 7 degrees 10 minutes East," the description reads "South 7 degrees 10 feet East." The plaintiffs claim that in addition to the minutes/feet problem, there is a directional problem in that the description contains no direction after the words "52 degrees" in one part of the description.
Apparently, Robert Winter never told any of the Kings about the typographical error Moore had informed him of.
During the first year, the Winter-King promissory note was twice renewed, but, nevertheless, again became delinquent for nonpayment. In an attempt to collect payment on the note, Moore contacted Harold King, who is the son of Malcolm and Jessie King. According to the plaintiffs, Harold had only occasionally worked with his uncle, Robert Winter, in the packing company business. Winter testified, however, that a partnership existed between himself and Harold King. Harold King further testified that, when Moore contacted him regarding the delinquency, Moore suggested that he (Harold) purchase the Vina Packing Company from his uncle. Moore, however, testified that Harold approached him about buying the business.
In any event, Harold and his wife, Carol, did purchase the company; Robert Winter and his wife conveyed the packing company property by deed to Harold and his wife. Pursuant to the financing arrangement with Moore, Harold paid the Bank the interest (approximately $8,000) overdue on the first note (the Winter-(Malcolm) King note), and, on August 27, 1981, executed a new promissory note and mortgage in favor of the Bank in the amount of $75,117.50. Malcolm and Jessie King also joined in this new note and mortgage and continued to pledge as security their Colbert County realty. Harold and Malcolm then began operating the packing company as partners.
Thereafter, Malcolm King borrowed $45,000 from the Franklin Federal Savings & Loan Association in Russellville, Alabama (now Phenix Federal Savings & Loan Association). He used this money to reduce the balance due on the Bank's note on the Vina Packing Company, thereby obtaining a release of his Colbert County property from the mortgage held by the Bank.[2]
Subsequently, Malcolm's other son, Paul King, and Paul's wife, Diane, became involved in the operation of the Vina Packing Company, and, when Harold got a better job offer, Paul and Diane agreed to buy the company from Harold and Carol.
Thereafter, Paul and Diane went to Moore at the Bank to arrange the financing for their purchase of the Vina Packing Company. The Bank prepared the note and the mortgage. The plaintiffs allege that during the closing of this transaction Paul asked Moore whether or not he needed to obtain a new title opinion on the property. They further allege that Moore responded by saying that, since the Bank still had the title opinion prepared for Harold King's purchase of the company, they did not need to have a new one done.
*277 Moore, on the other hand, testified he told Paul King "that if he chose to get a title opinion, that was his own prerogative to do so, that [the Bank] had a commitment for title insurance which was what the bank needed for it to be satisfied.... [I]t was up to him if he chose to get one."
On October 5, 1982, Paul and Diane, joined by Malcolm and Jessie, gave the Bank a promissory note in the amount of $36,461.75. As security, Paul and Diane executed a mortgage on the packing company in favor of the Bank. On October 7, 1982, Harold and Carol King deeded the Vina Packing Company to Paul and Diane King.
The Bank maintains that it was not until after Paul and Diane had bought the business that Malcolm and Jessie "paid down" the note on the packing company in order to obtain a release of their Colbert County property from the mortgage. There is testimony to the contrary, however, and the amount borrowed by Paul and Diane ($34,461.75) to finance their purchase of the company indicates that a large portion of the balance of the previous loan ($75,117.50) had been paid.
Nevertheless, Paul and Diane King maintain that Malcolm and Jessie operated the Vina Packing Company with them as partners following their purchase of Harold and Carol's interest in the company.
In 1983, Paul and Diane attempted to borrow $40,000 from another lending institution known as Bank Independent, at an interest rate more favorable than the rate they were paying on their note with the Bank of Red Bay. Their plans were to pay off that note, and obtain further operating capital, giving Bank Independent a mortgage on the packing company property as security for the $40,000 loan. In connection with Bank Independent's preparation of the mortgage, Paul King had an abstract on the Vina Packing Company property updated. A Tuscumbia, Alabama, attorney examined the abstract and concluded that, due to certain deficiencies in the legal description of the property (described above), he was unable to issue a title opinion or title insurance on the property to Bank Independent. On that basis, Bank Independent could not approve Paul and Diane King's loan.
After being advised of the deficiencies in the description, Paul King took the abstract to Mr. Moore at the Bank, and inquired as to why Moore had not informed him of the problems in the description, since Moore had previously told him the Bank had a title opinion on the property. Paul King testified that it was then that Moore told him that the Bank had mortgagee title insurance on the packing company property rather than a title opinion.
Thereafter, Paul and Diane King made no further payments on their note, thereby defaulting on it. In due course, the Bank began its foreclosure proceedings on the packing company mortgage, giving notice by correspondence and publication. Prior to the foreclosure sale, however, Paul and Diane King commenced this action on October 5, 1983, in Franklin Circuit Court against the Bank. In their complaint, Paul and Diane alleged, among other things, that the foreclosure proceedings were invalid due to the erroneous and insufficient description of the Vina Packing Company property, and they sought a preliminary injunction to restrain the Bank from proceeding with the foreclosure sale. Paul and Diane also stated a claim in fraud alleging that, in response to their inquiry as to the sufficiency of the legal title to the packing company property, the Bank intentionally and fraudulently deceived them by failing to disclose the existence of the error in the legal description of the property. Paul and Diane claimed that they relied upon this deception by executing a mortgage in favor of the Bank.
Following a hearing on Paul and Diane's request for injunctive relief, the trial court issued an order enjoining any further foreclosure proceeding provided they furnished security in the amount of $30,000. Paul and Diane failed to file the required bond and the foreclosure sale was conducted, with the Bank being the highest and best bidder.
*278 Numerous pretrial motions were filed by each side, all of which were denied. However, in response to the Bank's motion for a more definite statement regarding the allegation of fraud, Paul and Diane King amended their complaint on September 11, 1984, adding Malcolm King and Jessie King as parties plaintiffs, and pleading more specifically as to the alleged fraudulent concealment. In effect, each of the Kings claimed that a fiduciary relationship existed between the Bank and the Kings, which obligated the Bank to disclose to the Kings the existence of the title defect in the legal description of the Vina Packing Company property. The Kings alleged that the Bank's failure to do so amounted to suppression of a material fact constituting fraud under Code of 1975, § 6-5-102, which provides:
"Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
The Kings also claimed that the Bank willfully or recklessly misrepresented a material fact under Code of 1975, § 6-5-101, which provides:
"Misrepresentations of a material fact made willfuly to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
In due course, the case proceeded to trial before a jury, which returned a verdict in favor of Malcolm and Jessie King in the amount of $30,000 and in favor of Paul and Diane King in the amount of $10,000. Judgment on the verdict was entered and the Bank's post-judgment motions were denied. This appeal followed.
Essentially, four issues are presented for our review: (1) Was the Bank entitled to a directed verdict against Malcolm and Jessie King's fraud claim on the ground that their claims were time-barred under Code of 1975, § 6-2-3 and § 6-2-39, or did the amendment to Paul and Diane's complaint adding Malcolm and Jessie as plaintiffs relate back to the date the complaint was filed? (2) Did the plaintiffs adduce sufficient evidence to submit to the jury either of plaintiffs' fraud claims under § 6-5-101 or -102? (3) Did the trial court err in failing to give the jury charges requested by the Bank concerning the amount of damages recoverable by the Kings? (4) Should Malcolm and Jessie have been allowed to prove, as an element of their damages, the interest expense incurred by them on the loans made by other lending institutions, the proceeds of which were used to partially satisfy the note at the Bank?

I.
The statute of limitations applicable to actions for fraud is found at Code of 1975, § 6-2-39.[3] Under this section, the applicable period is one year, subject to the exception found in § 6-2-3, which provides:
"In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his action."[4]
Thus, the statute does not begin to run until the fraud is discovered.
"The `fact constituting the fraud' is deemed to have been discovered when it ought to have been discovered; that is, at the time of the discovery of facts which would provoke inquiry by a person of ordinary prudence and which, if followed *279 up, would have led to the discovery of the fraud."
Papastefan v. B & L Construction Co., 385 So.2d 966 (Ala.1980).
The Bank argues that, if Malcolm and Jessie King were defrauded as a result of its alleged breach of a fiduciary duty, that duty arose in July 1980 when Malcolm and Jessie and the Winters executed the first promissory note and mortgage on the packing company in favor of the Bank. The Bank also points to Malcolm King's testimony in which he stated that he obtained actual knowledge of the error in the property description and of the alleged misrepresentation in May 1983, the same time his son, Paul, discovered the problem with the title to the packing company property. Therefore, the Bank argues, viewing the facts most favorably to Malcolm and Jessie King, a reasonable person could conclude that Malcolm and Jessie were in possession of sufficient facts which would lead a reasonable person to investigate the possibility of fraud at least as early as May 1983 when Malcolm King became aware of the defect in title. Since the amendment adding Malcolm and Jessie as plaintiffs was not filed until September 11, 1984, some 16 months after Malcolm and Jessie learned of the title defect, the Bank asserts that their claim for fraud was time barred.
The Bank concedes that "the question of when a plaintiff discovered an alleged fraud is [generally] a question for the jury and is therefore not a proper matter for directed verdict." Osborn v. Johns, 468 So.2d 103 (Ala.1985). Nevertheless, the Bank maintains that a directed verdict should have been granted based on the limitations defense because "there is no disputed issue of fact upon which reasonable men could differ." Caterpillar Tractor Co. v. Ford, 406 So.2d 854, 856 (Ala. 1981).
With respect to the Bank's first argument that, as early as July 1980 Malcolm and Jessie were aware of facts that should have given rise to inquiry, we find the record totally devoid of any such facts of which they were aware prior to May 1983. Nor was there evidence adduced establishing that a partnership relationship existed between Malcolm King and Robert Winter from which Winter's knowledge could be imputed to Malcolm. Nevertheless, it was not until 16 months after they obtained actual notice of the defect that Malcolm and Jessie asserted their claims. Thus, the inquiry becomes whether the assertion of their claims by amendment related back to the date the original complaint was filed by Paul and Diane on October 5, 1983.
Relation back of amendments adding, changing, and substituting parties or names of parties in civil actions is governed by Rule 15(c), A.R.Civ.P., which provides:
"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading except as may be otherwise provided in Rule 13(c). An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. An amendment pursuant to Rule 9(h), Fictitious Parties, is not an amendment changing the party against whom a claim is asserted and such amendment relates back to the date of the original pleading." (Emphasis added.)
In Manning v. Zapata, 350 So.2d 1045 (Ala.Civ.App.1977), the Court of Civil Appeals followed Board of Water and Sewer Commissioners of City of Mobile v. McDonald, 56 Ala.App. 426, 322 So.2d 717, cert. denied, 295 Ala. 392, 322 So.2d 722 (1975), in concluding that Rule 15(c) can be *280 applied by analogy to amendments changing plaintiffs. That court explained:
"The applicability of Rule 15(c) to amendments seeking to add new plaintiffs is put in its proper perspective in 6 Wright & Miller, Federal Practice and Procedure, § 1501, at 523-24:
"`Although Rule 15(c) does not expressly apply to a new pleading adding or dropping plaintiffs, the Advisory Committee Note to the 1966 amendment of the rule indicates that the problem of relation back generally is easier to resolve in this context than when it is presented by a change in defendants and that the approach adopted in Rule 15(c) toward amendments affecting defendants extends by analogy to amendments changing plaintiffs. As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action against him, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense. This seems particularly sound inasmuch as the court will require the scope of the amended pleading to stay within the ambit of the conduct, transaction or occurrence set forth in the original pleading. [Emphasis in original.]
"`The courts seem to concentrate on the notice and identity of interest factors as they do in the case of amendments changing defendants. Thus, any amendment substituting a new plaintiff has been held to relate back if the added plaintiff is the real party in interest....'
"We further note that it has been held that an amendment adding a new party does relate back when the old and new parties have such an identity of interest so that such relation back would not be prejudicial. Williams v. United States, 405 F.2d 234 (5th Cir. 1968); 3 Moore's Federal Practice, 2d ed., at 1043-45; 6 Wright & Miller, Federal Practice and Procedure, at 524. [Emphasis added.]
"The standard which courts use in determining if an identity of interest exists, so as to allow relation back, is set out in 3 Moore's Federal Practice, footnote 11, at 1044-45:
"`Courts articulating the "identity of interest" standard generally require a substantial relationship between the old and new parties with regard to the litigation, as well as a sufficiently analogous legal position within the lawsuit to preclude the assertion of a new cause of action. Many of these cases involve substituting or adding related corporations....'"
350 So.2d at 1047. The court in Manning went on to hold that, in a subrogation suit, an amendment, which substituted the insurer (Standard Fire Insurance Company) who actually paid the insured's claim for the insurer who initiated the proceedings (All Risk Insurance Company), related back. That court reasoned that because (1) there was the requisite "identity of interest," (2) the claim arose out of the same conduct, transaction, or occurrence as set forth in the original complaint, and (3) the defendant was given notice when the initial complaint was filed, the defendant was, therefore, not prejudiced by the amendment and it should relate back.
After a careful review of the record, we find that the above elements of that test have been met in this case, thereby resulting in the relation back of Malcolm and Jessie King's claims to the date the original complaint was filed. Here, their claims for fraud stem from the same conduct on the part of the Bank as that originally alleged by Paul and Diane, namely, the failure of the Bank's officer, Moore, to inform the Kings of the title defect he knew existed.
Furthermore, with respect to the "identity of interest" element, the evidence adduced at trial supports the conclusion that there is "a substantial relationship between the old [Paul and Diane King] and new parties [Malcolm and Jessie King] with regard to the litigation, as well as a sufficiently *281 analogous legal position within the lawsuit to preclude the assertion of a new cause of action." Manning v. Zapata, 350 So.2d at 1047. In this case, there was evidence that, from the time Harold and his wife had bought the company, Malcolm and Jessie were active partners in the company. Moreover, at the time the original complaint was filed, Paul and Malcolm, along with their wives, operated the Vina Packing Company as partners, a fact of which the Bank was aware. Clearly then, there was a substantial relationship giving rise to the requisite "identity of interest." Finally, the amendment adding Malcolm and Jessie did not state a new cause of action; they merely asserted, in their own behalf, the same fraud claims Paul and Diane had originally asserted in their complaint.
The Bank purports to rely on the case of Holloway v. Jackson, 412 So.2d 774 (Ala. 1982); however, a different factual situation was involved in Holloway. In that case, the plaintiffs attempted to amend their complaint alleging fraud, among other things, to add Jackson as a defendant after the statute of limitations had run. This Court concluded that the amendment did not relate back, and the fraud claim against Jackson was, therefore, barred because
"[t]here [was] no basis upon which [the court] can conclude that Jackson `has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and ... knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.' Rule 15(c), A.R.C.P." 412 So.2d at 779.
Thus, in Holloway, this Court, following the plain language of the rule, determined that to allow relation back of the amendment in that case would be prejudicial to the defendant Jackson. The facts of the case sub judice call for a contrary result; therefore, we conclude that the amendment adding Malcolm and Jessie's claims related back to the date the complaint was originally filed.

II.
The Bank contends that the Kings failed to meet their burden of proving the elements of fraud under either of the counts under § 6-5-101 and § 6-5-102, supra. Having properly filed motions for directed verdict and judgment notwithstanding the verdict or, in the alternative, for a new trial, challenging the sufficiency of the evidence on each of the counts, the issue is whether the Bank's motion for directed verdict as to either count was improperly denied. Cincinnati Ins. Co. v. Little, 443 So.2d 891 (Ala.1983); Aspinwall v. Gowens, 405 So.2d 134 (Ala.1981).

A. Misrepresentation
In order to go to the jury on a claim of misrepresentation, the plaintiff must adduce at least a scintilla of evidence on each of the following four elements of fraud under § 6-5-101:
"[T]here must be (1) a false representation (2) concerning a material existing fact (3) relied upon by the plaintiff (4) who must be damaged as a proximate result. International Resorts, Inc. v. Lambert, 350 So.2d 391 (Ala.1977)." Earnest v. Pritchett-Moore, Inc., 401 So.2d 752, 754 (Ala.1981).
The Bank argues that the plaintiffs' claims for misrepresentation are deficient on two of the four elements above: First, the Bank contends that the fact alleged to have been misrepresented by its officer, Kelly Moore, (viz., that the Bank had a title opinion when, in fact, it did not) did not constitute a material fact within the meaning of the Alabama fraud statutes. Second, the Bank maintains that the plaintiffs failed to establish that their reliance on the conversation with Moore, concerning a title opinion, was reasonable, considering the totality of the circumstances.
In support of its argument that the alleged misrepresentation was not material, the Bank relies on the following testimony of Paul King:
"Q. Had you ever borrowed money from a bank before?
"A. I had.

*282 "Q. Okay, had you ever bought land before?
"A. I had.
"Q. Had you ever given a mortgage on land before?
"A. Yes.
"Q. Had you ever secured a title opinion regarding the purchase of land before?
"A. Not personally. A brother of mine and I bought some land together in Colbert County, and he took care of most of it.
"Q. Pursuant to that sale, when you bought that land and mortgaged it, did you get a title opinion?
"A. I didn't personally. My brother did.
"Q. Were you aware that some title work had been done?
"A. I was.
"...
"Q.... Did you ask Kelly Moore if you were getting good title to the property?
"A. In essence.
"Q. That's not what I asked you. Did you ask Kelly Moore, am I getting good title to this property?
"A. No, I asked him if I needed a title opinion.
"Q. Did you ask him if there was anything wrong with the title, with the property?
"A. No.
"Q. Did you ask him if the bank was guaranteeing title to the property?
"A. No, I did not.
"Q. Do you recall any conversations about the security to the bank?
"A. No.
"Q. You understood that they were taking the mortgage?
"A. I did.
"Q. You understood what that meant?
"A. I did."
In its brief, the Bank argues that this testimony clearly shows that Paul King "was aware of the basic steps and responsibilities of the parties in purchasing real property, and securing the same by way of a real estate mortgage." The Bank further maintains that "Paul King was aware that the real estate mortgage executed in favor of the Bank was for [its] security, and, [therefore], there was no reliance by King on any representation by Kelly Moore as concerns the sufficiency of the title to the real property."
A "material fact," within the meaning of the Alabama fraud statutes, is a fact of such a nature as to induce action on the part of the complaining party, Crigler v. Salac, 438 So.2d 1375 (Ala.1983). It is not necessary that the misrepresentation be the sole inducement: "`[I]t is sufficient if it materially contributes and is of such a character that the [complaining party] would not have consummated the contract, had he known the falsity of the statement.'" Marshall v. Crocker, 387 So.2d 176, 178 (Ala.1980), quoting Jordan & Sons v. Pickett, 78 Ala. 331, 338 (1884). Generally, the materiality of a given fact is a question for the jury. Jim Walter Homes, Inc. v. Waldrop, 448 So.2d 301 (Ala.1983); Courtesy Ford Sales, Inc. v. Clark, 425 So.2d 1075 (Ala.1983). Thus, the question becomes whether the plaintiffs adduced a scintilla of evidence to go to the jury on the issue of whether the alleged misrepresentation by Moore "materially contributed" to their decision to purchase the Vina Packing Company and to obligate themselves to the Bank through the note and the mortgage thereon.
Our search of the record discloses that, on two occasions, once during the direct examination of Paul King, and again during the direct examination of Malcolm King, counsel for plaintiffs attempted to elicit testimony proving the "materiality" of the misrepresentation. Both times, however, counsel for the Bank objected and the trial court sustained the objections:
"[Testimony of Paul King:]
"Q. After you got into the office, tell the jury what you discussed concerning a title opinion.

*283 "A. I asked himmy brother, Harold, had told me to be sure and ask about a title opinion, because they had one on him. So I told Kelly [that] Harold told me to make sure to ask if I would need to renew the title opinion, and he said, no, that they had one on Harold, and they would use it, and it would save that much money.
"Q. Did you rely upon that statement?
"A. I did.
"Q. If you had known at that time that there was no title opinion, what effect would it have had on your decision to purchase the property?
"MR. BEDFORD: We object to that. that's asking for an uncommunicated intent, a state of mind.
"MR. BLASINGAME: There are some cases, let me cite it for you, that state in fraud cases you can state what you would or would not have done.
"THE COURT: At this point, I sustain the objection.
"MR. BLASINGAME: I'd like to make an offering.
"THE COURT: I'll be glad to look at your cases.
"MR. BLASINGAME: I'd like to make an offer into the record what I would like to prove at this time, Judge, if I can.
"THE COURT: I'll give you an opportunity to state for the record outside the hearing of the jury what the evidence would be, and if you would, I would appreciate it if you would approach the Court Reporter so as not to tell the jury. Ladies and gentlemen, this is a legal matter.
"OUT OF THE HEARING OF THE JURY
"MR. BLASINGAME: We offer as evidence at this time that Paul King would testify that if he had been told there was no title opinion by Kelly Moore, he would not have purchased the property, or would have sought a title opinion to be sure on the title that he relied upon Kelly Moore's statement at that time.
"THE COURT: Have you quickly got a cite?
"MR. BLASINGAME: Yes, sir, I think I can.
"THE COURT: All right, go ahead."
"...
"[Testimony of Malcolm King:]
"Q. The day you went down and signed that promissory note and mortgage what, if anything, did Kelly Moore tell you about there being a problem with the title defect or description?
"A. Nothing mentioned at all.
"Q. If Kelly Moore had told you there was a problem with the description in the real estate, how would that have affected whether you did or did not sign the mortgage?
"MR. FORD: Your Honor, we object on the ground it calls for an uncommunicated state of mind, asking him what he would speculate that he might or might not have done, had certain other facts been disclosed to him, which were admittedly not disclosed.
"THE COURT: I sustain.
"MR. BLASINGAME: We offer the same cases. We offer to make a showing in the record.
"THE COURT: Would it be the same as before?
"MR. BLASINGAME: Yes.
"THE COURT: Let the record show his offer is renewed as to the proposed answer to this question.
"MR. BLASINGAME: He would basically testify the same as what I've put in the record for Paul [King] previously.
"THE COURT: All right, it's so stipulated.
"MR. BEDFORD: We so stipulate the showing is identical. That's the extent of the stipulation.
"THE COURT: I'm just saying the Court would put that into the record. Go ahead."
Although an offer of proof on the question of materiality was made below, in their cross-appeal plaintiffs do not claim as error the trial court's refusal to allow the witnesses to respond on this issue. Birmingham *284 Bottling Co. v. Morris, 193 Ala. 627, 69 So. 85 (1915). Nor have we otherwise been able to find in the record even a scintilla of evidence from which a jury could reasonably infer that Moore's statement regarding a title opinion induced the Kings to do or not to do something. In other words, there is no evidence of record that, in fact, the decisions made or actions taken by the plaintiffs were, even in part, related to or contingent upon Moore's statement regarding whether the Bank had a title opinion. See Cook v. Brown, 393 So.2d 1016 (Ala.Civ.App.1981).
Furthermore, we agree with the Bank that the only reasonable inference to be drawn from the context in which the inquiry was made, as admitted to by Paul King, is that Paul King was merely ascertaining what things he needed to provide the Bank in order for it to approve the financing transaction; he was not, in his own interest attempting to ascertain or inquire as to the sufficiency of the title to the packing company property. Thus, the alleged misrepresentation was not shown to have been of a material fact. Accordingly, there being a complete absence of proof on one of the essential elements of misrepresentation, the trial court erred in failing to direct a verdict in favor of the Bank on the plaintiffs' claims for misrepresentation. Osborn v. Johns, 468 So.2d 103, 111 (Ala. 1985). We need not address the issue of reliance raised by the Bank with respect to the plaintiffs' misrepresentation claim.

B. Suppression
The Bank further argues that the plaintiffs also failed to adduce a scintilla of evidence to prove that the Bank had the duty to disclose the existence of the error in the property description. The Bank correctly points out that mere silence is not actionable unless there is a duty to disclose material facts. Holdbrooks v. Central Bank of Alabama, N.A., 435 So.2d 1250 (Ala.1983). In Holdbrooks, however, this Court recognized that there is "an obligation to communicate material facts in a confidential relationship or because of the presence of special circumstances. Code of Alabama, § 6-5-102." Id. at 1252.
A confidential relationship is one in which
"`one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and acepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another.'
"15A C.J.S. Confidential (1967). See, also, Floyd v. Green, 238 Ala. 42, 188 So. 867 (1939); Raney v. Raney, 216 Ala. 30, 112 So. 313 (1927)."
In Jim Short Ford Sales, Inc. v. Washington, 384 So.2d 83, 86-87 (Ala.1980), this Court, quoting from Prosser, Torts (4th ed.1971), Chap. 18 § 106, explained further the duty of disclosure arising out of special circumstances:
"Prosser notes that
"`... there has been a rather amorphous tendency on the part of most courts to find a duty of disclosure in cases where defendant has special knowledge or means of knowledge not open to the plaintiff and is aware that the plaintiff is acting under a misapprehension as to facts which would be of importance to him and would probably affect his decision. [Prosser, supra, p. 697.]'
"Our own statute recognizes that situations other than those involving fiduciary relationships may give rise to a duty *285 to disclose by providing that the `obligation to communicate may arise ... from the particular circumstances of the case.' Our case law has construed such circumstances to exist where parties were not dealing at arm's length, Williams v. Bedenbaugh, 215 Ala. 200, 110 So. 286 (1926), and where plaintiff entered into a contract with an insolvent after communicating with defendant, who knew of such insolvency, but did not reveal it, Chapman v. Rivers Construction Company, 284 Ala. 633, 227 So.2d 403 (1969). A duty to speak depends upon the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances. Hall Motor Co. v. Furman, 285 Ala. 499, 234 So.2d 37 (1970).... The U.S. Court of Appeals for the Fifth Circuit, applying Alabama law in discussing this issue, has remarked:
"`... [T]he types of relationships wherein a duty to disclose has been found indicate that the Alabama courts give little attention to the designation of the relationship, such as vendor-vendee, etc., but instead look to the relative bargaining positions of the parties. [Citations omitted.] Where one party has some particular knowledge or expertise not shared by the plaintiff a duty to disclose has been recognized. Cf. Collier v. Brown, 285 Ala. 40, 228 So.2d 800 (1969).'
"First Virginia Bankshares v. Benson, 559 F.2d 1307 (5th Cir.1977). Thus, each case must be individually examined to determine whether a duty of disclosure exists; a rigid approach is impossible, and, indeed, the words of the statute itself counsel flexibility."
While the relationship between a bank and its customer has been traditionally viewed by courts as a creditor-debtor relationship which does not impose a fiduciary duty of disclosure on the bank, a fiduciary duty may, nevertheless arise when the customer reposes trust in a bank and relies on the bank for financial advice, or in other special circumstances. Baylor v. Jordan, 445 So.2d 254, 256 (Ala.1984), citing Brasher v. First National Bank of Birmingham, 232 Ala. 340, 168 So. 42 (1936) and Annot, "Bank as FiduciaryDuty of Disclosure," 70 A.L.R.3d 1344 (1976).
At the outset, we note that materiality is also an essential element of a claim for fraudulent suppression. We held above that, as to the claim for misrepresentation, there was no evidence adduced to prove the materiality of the fact misrepresented by the Bank. The same is true with respect to the claim for fraudulent suppression. The only evidence as to the materiality of the existence of the title defect, which the Bank admitted it did not disclose to the Kings, is the testimony quoted below and it pertains only to Malcolm and Jessie King:
"[Cross-examination of Malcolm King]
"Q. At that time, this July, 1980, loan, I'm going to stay with this transaction. Are you saying it's at that time Mr. Moore should have told you there was some problem with the description of the Vina Packing Company property.
"A. I do.
"Q. If I understand what you're saying on direct examination, you're saying Mr. Moore, the bank officer, Mr. Moore's failure to tell you this about the description when you signed the note and mortgage in July, 1980, his failure to tell you that is what caused you to obligate yourself on the debt?

"A. That's right." (Emphasis added.)
Nevertheless, by this testimony, reference is made to only the July 1980 transaction which marked Malcolm King's first involvement with the Vina Packing Company. At that time, there were no special circumstances present which may have given rise to a duty to disclose. When both parties are intelligent and fully capable of taking care of themselves and dealing at arm's length, with no confidential relations, no duty to disclose exists when information is not requested, and mere silence is then not a fraud. There must be active concealment or misrepresentation. Mudd v. Lanier, 247 Ala. 363, 377, 24 So.2d 550, 562 (1945); quoted in Jim Short Ford Sales, Inc. v. *286 Washington, supra; accord, Berkel & Co. Contractors v. Providence Hospital, 454 So.2d 496 (Ala.1984). It was only through later occurrences that the relationship between the Kings and Mr. Moore at the Bank may have become such that "confidence [was] reposed and accepted, or influence acquired." Floyd v. Green, 238 Ala. 42, 47, 188 So. 867, 871 (1939). These occurrences include Moore's alleged solicitation of Harold King to purchase the failing packing company from Robert Winter, and Moore's personal assistance in the operations of the packing company.[5]
We, therefore, hold that the plaintiffs' claims for fraudulent suppression must also fail because they failed to adduce a scintilla of evidence on the essential element of materiality. Accordingly, the trial court erred in failing to direct a verdict in favor of the defendant Bank. For that reason, the judgment below must be, and it is, reversed and the case remanded for entry of judgment consistent with this opinion. Because the case must be reversed on the fraud issues, we need not address any of the other issues raised by these appeals.
REVERSED AND REMANDED.
FAULKNER, ALMON and HOUSTON, JJ., concur.
TORBERT, C.J., concurs specially.
TORBERT, Chief Justice (concurring specially).
The plaintiffs in this case ask the Court to say that the facts presented make out a case of fraud or suppression. I agree with the Court that the plaintiffs failed to prove their case.
Both the misrepresentation claim and the suppression claim require that the plaintiff prove that a material fact was misrepresented or suppressed. Code 1975, §§ 6-5-101, 6-5-102. As to the misrepresentation claim, there is no evidence that Paul and Diane King considered the title opinion issue to be of concern to them in making the decision to execute the mortgage. Justice Beatty correctly points out that, given the context in which the remarks were made, the Kings appear to have been concerned only with providing the documentation needed to secure the loan. The suppression claim fails for basically the same reason. At the time during which some evidence indicates there was materiality, there was no duty to disclose, because of the absence of a confidential relationship. As to the time during which there was allegedly a confidential relationship, there is no evidence supporting the materiality of the allegedly suppressed fact.
Having concluded that plaintiffs failed to establish a prima facie case of misrepresentation or suppression, I see no need to address the other issues raised in the appeal and cross-appeal.
NOTES
[1] Malcolm King and Melissa Winter are brother and sister.
[2] Purportedly, this property was again mortgaged to Franklin Federal Savings & Loan Association to secure Malcolm's $45,000 note there.
[3] Since this lawsuit was filed, § 6-2-39 was repealed effective January 9, 1985, and its provisions transferred to § 6-2-38, so that those actions previously subject to the one-year limitations period under § 6-2-39 now have the two-year limitations period of § 6-2-38.
[4] Also effective January 9, 1985, § 6-2-3 was amended to substitute "two years" for "one year."
[5] Diane King testified that Moore had assisted her with the handling of the company bank account, and Moore testified that on one occasion he spent an entire day helping out the Kings at the packing company when they were exceptionally busy.