ALMON, Justice.
This is an appeal from a summary judgment entered in favor of the defendants, John Campbell and Doris Campbell,[1] and *853 against the plaintiff, Frances Beinlich, in a declaratory judgment action. Frances, the executrix of the estate of her deceased father-in-law, Alfred Beinlich, Jr., brought this action against the Campbells, who had been friends with Alfred for approximately 36 years. Frances and her two children, Alfred’s grandchildren, are the sole beneficiaries under Alfred’s will. She sought a determination of the ownership of collections of arrowheads, coins, stamps, and fossils that Alfred had allegedly given to the Campbells before his death. Frances contended that that gift was procured through the exercise of undue influence by the Campbells over Alfred, and she sought to have the collections returned to Alfred’s estate. Frances argues that the evidence she presented of a confidential relationship between Alfred and the Campbells in which the Campbells were the dominant parties was sufficient to withstand the Campbells’ motion for summary judgment.
A confidential relationship exists when two parties stand in such a relation to each other that trust and confidence is justly reposed by one person in the other and the person in whom that trust and confidence are placed possesses the degree of influence that naturally grows out of that trust and confidence. Floyd v. Green, 238 Ala. 42, 188 So. 867 (1939); see Alabama Pattern Jury Instructions: Civil 82.10 (1977).
There was substantial evidence that Alfred had a confidential relationship with the Campbells, especially with John. The two had been friends since 1952, when John began working for the Tennessee Valley Authority, along with Alfred. According to deposition testimony given by Billy R. Mann, another long-time friend of Alfred’s:
“John and A1 have been ... like brothers for as long as I’ve known them. And probably John was the closest person on earth to Al. And with a relationship like that there’s inherent trust involved. A1 trusted John completely.”
Alfred executed an instrument giving John power of attorney in 1981. According to John, he did not exercise that power of attorney until Alfred was hospitalized for treatment of prostate cancer in 1988. Alfred underwent surgery and radiation treatments during that hospitalization and, as a result, was bedridden. Because of Alfred’s weakened condition, John assumed complete responsibility for Alfred’s personal affairs, including paying his bills, keeping his financial records, and discussing with Alfred’s lawyer the possibility of adding a codicil to Alfred’s will. The Camp-bells were also involved in making decisions regarding Alfred’s medical care. They continued to be responsible for Alfred’s personal affairs until his death.
A plaintiff seeking to invalidate an inter vivos gift on grounds of undue influence must produce evidence that the donor and the donee were in a confidential relationship and that the donee was the dominant party in the relationship.[2] Chandler v. Chandler, 514 So.2d 1307, 1308 (Ala.1987). If the plaintiff makes out such a prima facie case, the donee must either refute the proof that he was the dominant party in a confidential relationship or show that the transaction was “fair, just, and equitable in every respect.” Brothers v. Moore, 349 So.2d 1107, 1109 (Ala.1977). The law raises a presumption of undue influence when an inter vivos gift is made to the dominant party in a confidential relationship. As this Court stated in Hutcheson v. Bibb, 142 Ala. 586, 587, 38 So. 754, 754 (1905):
“In transactions inter vivos, where confidential relations exist between the parties, the law raises up the presumption of undue influence, and puts upon the do-nee, when the dominant party in the transaction, the burden of repelling such *854 presumption by competent and satisfactory evidence; and this is usually done by showing that the [donor] had the benefit of competent and independent advice of some disinterested third party.”
In the instant case there were a number of depositions introduced that stated, in sum, that Alfred was intelligent, of sound mind, and stubborn. Those affidavits fail to address the central question in cases of this type — namely, whether the donees, in this case the Campbells, were the dominant parties in a confidential relationship with the donor, in this case Alfred. However, Frances did introduce affidavits that addressed that question. The first affidavit was by David Horton, the administrator of the hospital where Alfred was treated. Doris asked Horton to notarize an instrument she had prepared that purported to convey Alfred’s collections to the Campbells. Horton had a private conversation with Alfred, and as a result of that conversation refused to notarize the instrument. In his affidavit Horton explained that refusal:
“I proceeded up to the room where Mr. Beinlich was a patient in the hospital and asked Mr. and Mrs. Campbell to leave the room while I discussed the matter with Mr. Beinlich by himself. I did this because I wanted to determine if Mr. Beinlich wanted to make these gifts voluntarily and I felt like it was my duty to ascertain that. I went into Mr. Beinlich’s room where only he and myself were present and questioned him regarding the contents of the instrument and what it meant. When I did so, he was very uncommunicative, usually giving answers only in ‘yes’ or ‘no’ and there were some questions which he did not fully respond to. Mr. Beinlich was very uncommunicative and did not expound at all on the subject matter of our conversation. Mr. Beinlich appeared to be under a great deal of stress and to be undergoing a great deal of emotional strain. His eyes were clouded with tears. Under the circumstances, I did not feel comfortable witnessing or notarizing the document and told Mr. Beinlich it was my feeling that he should contact his lawyer himself if he genuinely wanted to give the gifts of property involved.
“I informed Mr. and Mrs. Campbell that I did not feel like I could notarize the document as they requested for the reasons stated above.”
The second affidavit was provided by Kris Flanagan, a social worker at the hospital, who was involved in planning Alfred’s care. In her affidavit Flanagan said that the Campbells, especially Doris, “exercised the principal role” in making decisions for Alfred. She stated that the Campbells would answer questions that were directed to Alfred, and would discuss his needs and care. According to Flanagan, Alfred would almost always defer to the Camp-bells for responses to questions regarding him and for decisions concerning his care. Flanagan stated that the role the Camp-bells played in Alfred’s life grew more prominent as his health deteriorated. The Campbells were, in Flanagan’s opinion, “very dominant” in their relationship with Alfred after his surgery.
Those affidavits presented a genuine issue as to a material fact, that is, whether the Campbells were the dominant parties in a confidential relationship with Alfred at the time the gift of the collections was made. Chandler, supra. The Campbells have not shown that, as a matter of law, the gift was fair, just, and equitable in every respect, so they have not conclusively rebutted Frances’s prima facie showing.
Because Frances produced substantial evidence both that a confidential relationship existed and that the Campbells were dominant in that relationship, the Camp-bells are not entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. Therefore, the judgment of the trial court is reversed, and this cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.

. The defendants will usually be referred to as "the Campbells.” However, where appropriate, they will also be referred to as "John” or "Doris."

. In a parent-child relationship, which is per se confidential, the plaintiff does not have to show by clear and convincing evidence (the normal standard in a rescission case not involving a confidential relationship) that the donee child was the dominant party in the relationship, but only has to make such a showing “to the reasonable satisfaction of the court” in order to place upon the donee the burden of rebutting the prima facie case. Chandler, supra. Similarly, Frances does not have to establish a confidential relationship and dominance by the Camp-bells by clear and convincing evidence in order to create a question of fact that will defeat the motion for summary judgment.