[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 105 
Plaintiff Johnny Osborn appeals from a summary judgment granted in favor of defendant First Citizens Bank of Etowah and from judgments on directed verdicts granted in favor of defendants J.D. Johns[1] and Universal Equipment Rental, Inc. We affirm.
On April 16, 1981, Osborn filed suit alleging default in payment of a note and fraud against defendants, J.D. Johns; L. Alan Wilson; Service Concrete Company, Inc. (Service Concrete); Universal Equipment Rental, Inc. (Universal Equipment); First Alabama Bank of Gadsden (First Alabama Bank); and First Citizens Bank of Etowah (Citizens Bank). By amendment, plaintiff added Gadsden Ready Mix (Ready Mix) as a party defendant and asserted an additional claim for breach of lease against all defendants. Also in this amendment, plaintiff revived his action against the estate of J.D. Johns, pursuant to § 6-5-466, Code of 1975.
The following dispositions have occurred with regard to the respective defendants:
(1) On October 2, 1981, First Alabama Bank obtained a summary judgment in its favor. No appeal was taken.
(2) On October 29, 1981, the trial court granted summary judgment in favor of Citizens Bank dismissing all claims against it. Osborn's motion to reconsider was denied.
(3) On November 23, 1982, Wilson was severed from this case as a result of his filing a petition for bankruptcy.
(4) On March 4, 1983, a directed verdict and judgment for $50,435 in favor of Osborn was entered against Service Concrete and Ready Mix.
(5) On March 4, 1983, the trial court granted a directed verdict in favor of Johns and Universal Equipment on all claims. Plaintiff's motion for new trial was denied.
The record is composed of the evidence introduced on Citizens Bank's motion for summary judgment and the evidence adduced at trial. While our review of the summary judgment in favor of Citizens Bank must be based on the evidence before the trial court at the time it granted summary judgment, see Ex parteBagby Elevator Electric Co., 383 So.2d 173, 176 (Ala. 1980), and our review of the directed verdict in favor of Johns and Universal Equipment must of necessity be based on evidence presented at the trial, see Harris v. Hall, 234 Ala. 115,173 So. 849 (1937), the same basic facts were involved in each proceeding. At the trial, however, much of the evidence was admitted against some parties but not against others. Without delineating the origin of the evidence or against which party or parties it was admitted, we set forth the following synopsis of the facts:
Plaintiff Osborn was the owner of all the stock (1,000 shares) in Service Concrete, which had a ready-mix concrete plant in Rainbow City. In April of 1976, plaintiff entered into negotiations to sell this business. The agreed-upon terms of the sale, as embodied in the sales contract, included a price of $350,000, less the indebtedness of Service Concrete, of which Osborn was to receive 29% down, with the balance to be paid over a five-year period. In addition, *Page 106 
Osborn agreed to lease to Service Concrete the property upon which it was then operating for a five-year period at $1,600 per month and the buyer agreed to assume all indebtedness of Service Concrete. At the time of the sale, Service Concrete had outstanding three notes to First Alabama Bank totalling some $180,000 and secured by virtually all of the company's assets. Some $18,000 to $20,000 of this $180,000 was used by Osborn to construct the buildings housing the Service Concrete operations, which were subsequently leased to Service Concrete.
The sale was closed on April 16, 1976, in the office of J.D. Johns, then president of First Alabama Bank. Although plaintiff asserts that he was selling Service Concrete to Johns, a different person, L. Alan Wilson, was designated in the transaction documents as the purchaser of Osborn's stock, and Wilson executed the promissory note that evidenced the deferred portion of the purchase price. This note, in the amount of $114,212.60, was secured by the 1,000 shares of Service Concrete stock and provided that "5 annual installments of $22,842.52 plus interest from date at 8%" were to be paid Osborn each January 15, beginning in 1977. At the closing, Osborn received a check drawn on Universal Equipment in the amount of $46,650.21 as the 29% down payment.
Shortly after the sale, Johns left First Alabama Bank and became president of Citizens Bank. Service Concrete then began to bank at Citizens Bank. Thereafter, several loans made to Service Concrete by various financial institutions were guaranteed by Johns or Universal Equipment, which corporation plaintiff Osborn asserts is actually the alter ego of Johns. One such loan, in the amount of $180,000 from Birmingham Trust National Bank, was actually a refinancing of the original indebtedness of Service Concrete which was assumed by Wilson in the sale.
In 1979 and 1980, Wilson was unable to meet his yearly obligation to Osborn. These installments were renegotiated between Osborn and Wilson, without the involvement of anyone else. New promissory notes for these installments were executed by Wilson or by Wilson and Service Concrete. During one of these renegotiations, Wilson informed Osborn that Service Concrete was having financial difficulties. Prior to this, in late 1977 or early 1978, Osborn had instructed his attorney to obtain from the Secretary of State information concerning financing statements filed on Service Concrete. A response was received indicating that the assets of the company were subject to a number of security interests.
Service Concrete operated at a loss during 1977, 1978, 1979, and 1980. Universal Equipment, after paying off every loan to Service Concrete which it had guaranteed, including the loan from Birmingham Trust National Bank, and taking assignments of the security interests involved in those loans, eventually instituted foreclosure proceedings against Service Concrete. Universal Equipment purchased Service Concrete's assets at the foreclosure sale and subsequently leased the equipment to Ready Mix, a corporation formed by one D.L. Ashley and managed by Wilson. Ready Mix failed to make the payments due Universal Equipment under the lease, and Universal Equipment repossessed the equipment and thereafter sold it at auction for $43,000.
At the time suit was filed, Osborn had received all but approximately $37,880 on the original note for $114,212.60 and the notes executed for the 1979 and 1980 annual payments. In his complaint, plaintiff alleges that this amount is due him "under the notes" from all defendants. His claim against all defendants for breach of lease alleges "that defendants have failed and refused to return the real property as described in said lease to the plaintiff in condition in conformity to the provisions of the lease." It is undisputed that Osborn has received all monies due him under the terms of the lease. In regard to his claim for fraud, plaintiff alleges that all of the defendants conspired to defraud him in that defendants, through the misuse of corporate *Page 107 
identities and other acts, caused the stock in Service Concrete, which was his only collateral for the purchase price, to become totally worthless by "wast[ing] and dilut[ing] the assets of Service [Concrete]."
 I.
First, we address the issue of whether the trial court was correct in granting summary judgment in favor of Citizens Bank. Citizens Bank based its motion for summary judgment on the pleadings and on Osborn's deposition, directing the court's attention to the portions of the deposition containing the following excerpts:
 "Q. [By counsel for Citizens Bank] You know that after J.D. left First Alabama, he went over and started banking at Citizens? You're aware of that.
"A. Yes.
 "Q. Other than that, do you have or know of any claim whatsoever in regard to this transaction you have got against Citizens Bank?
"A. No, sir.
"Q. You don't have any claim against them?
"A. No, sir.
". . . .
 "Q. Let me ask you one more time: Do you know any reason or wrongdoing or anything that you know of that Citizens Bank did other than hire Mr. Johns at some point that ought to have them involved in your case or claim at all?
"A. No, sir."
Osborn responded to Citizens Bank's motion by offering the following affidavit in opposition:
 "I am Johnny M. Osborn, plaintiff in the above styled proceeding and I am submitting this affidavit in response to the Motions for Summary Judgment filed by the First Alabama Bank of Gadsden and the First Citizens Bank of Etowah, defendants in the above styled lawsuit. Though I have not seen a copy of my deposition which was taken on July 9, 1981, I suspect that the Motions for Summary Judgment filed by the defendants relate to answers given to their attorneys with respect to whether I made a claim against these two banks. As I understood the questions asked by their attorneys, they were asking whether either of these two banks were relied on as original debtors in connection with the debt owed me by J.D. Johns. I stated that I had no claim against these banks in this regard. That is true and I affirm this testimony. . . .
 "I have a claim which I feel to be much stronger against the First Citizens Bank of Etowah. J.D. Johns acted as officer and director of the bank, the First Citizens Bank of Etowah, during the period of time when the assets of Service Concrete Co., Inc., were being fraudulently manipulated and drained by J.D. Johns and other individual and corporate defendants. As agent of the First Citizens Bank of Etowah, J.D. Johns was involved in the loaning of money to Service Concrete Co., Inc., and funds were manipulated between Service Concrete Co., Inc., Universal Equipment Rental, Inc., the individual defendants and Citizens Bank of Etowah during this period of time. The books of Service Concrete Co., Inc., indicate loans made from Citizens Bank of Etowah to Service Concrete Co., Inc., apparently in note transactions. The books and records also show that the Citizens Bank of Etowah was the primary checking account depository of Service Concrete Co., Inc., and that Citizens Bank of Etowah by and through its agent J.D. Johns allowed Service Concrete Co., Inc., to operate the business with such checking account in a substantial overdraft condition giving the corporation a false appearance of financial health. Thus, I claim specifically that the First Citizens Bank of Etowah by and through its agent J.D. Johns was engaged in an active fraud upon me resulting in the devaluation and rendering worthless of the stock in Service Concrete Co. which I held as collateral for the debt owed to me by J.D. Johns.
 "Notwithstanding statements made in my previous deposition which were true *Page 108 
as I understood the questions stated to me at that time, I do have substantial claims to make against First Alabama Bank of Gadsden and First Citizens Bank of Etowah."
This affidavit clearly does nothing more than restate the allegations and conclusions contained in Osborn's original complaint. Furthermore, it was unaccompanied by certified copies of the documents referred to. Consequently, it does not, as Citizens Bank correctly asserts, comply with Rule 56 (e), A.R.Civ.P., which provides in pertinent part:
 "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. . . ." (Emphasis added.)
In Moore's Federal Practice, we find the following language regarding affidavits in support of, or in opposition to, summary judgment:
 "Affidavits containing statements made merely `on information and belief' will be disregarded. Hearsay testimony and opinion testimony that would not be admissible if testified to at the trial may not properly be set forth in an affidavit. The affidavit is no place for ultimate facts and conclusions of law, nor for argument of the party's cause. . . ."
6 J. Moore J. Wicker, Moore's Federal Practice, Paragraph 56.22[1] at 56-1312 through 56-1317 (2d ed. 1982) (footnotes omitted). See also Day v. Merchants National Bank of Mobile,431 So.2d 1254 (Ala. 1983).
Citizens Bank's motion for summary judgment was argued and submitted to the trial court based on Osborn's deposition and affidavit on October 1, 1981. The judgment in favor of Citizens Bank was entered October 29, 1981. Osborn filed his motion for reconsideration October 30, 1981, "pray[ing] that the depositions of Shirley Miller, Elizabeth Turner, and Jane Hartsook be published and considered by the Court in connection with this motion." Plaintiff also filed another affidavit and attached several documents in support thereof. The depositions referred to in the motion were all filed prior to the trial court's decision (Turner's deposition was filed October 19, Miller's on October 23, and Hartsook's on October 27), butafter the submission of the motion.
This Court dealt with an identical situation in Guess v.Snyder, 378 So.2d 691 (Ala. 1979), which involved a claim for medical malpractice. In opposition to the defendant doctor's motion for summary judgment, plaintiff filed an affidavit from her attorney to which was attached an unsworn letter from a Kentucky physician. This affidavit, like Osborn's herein, was insufficient under Rule 56 (e). The motion for summary judgment was submitted March 2, 1978, on the affidavit of plaintiff's attorney and the evidence filed by the defendant. On March 9, plaintiff filed an additional opposing affidavit from the Kentucky physician. The trial court granted summary judgment for the defendant on March 14. Recognizing that "[t]he trial court can consider only that material before it at the time ofsubmission of the motion" and that any material filed thereafter "comes too late," this Court concluded that the affidavit of the Kentucky physician filed March 9 was "unquestionably untimely." 378 So.2d at 692 (emphasis added).See also Mathis v. Jim Skinner Ford, Inc., 361 So.2d 113 (Ala. 1978). Applying these principles to the present case, we find that none of the material referred to in Osborn's motion for reconsideration was properly before the trial court and, therefore, cannot be considered on appeal by this Court. See Exparte Bagby, supra.
It is well settled that summary judgment is proper only where the moving party has clearly shown the absence of any genuine issue of material fact and is entitled to judgment as a matter of law. Savage v. Wright, 439 So.2d 120, 123 (Ala. *Page 109 
1983); Rule 56 (c), A.R.Civ.P. Citizens Bank offered, in support of its motion, Osborn's deposition in which he stated he had no claim against Citizens Bank, and, further, that he knew of no reason why the bank should be involved in the case. In opposition, as we demonstrated above, Osborn essentially relied on his initial pleadings. Rule 56 (e), A.R.Civ.P., provides:
 "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."
Since Osborn's deposition affirmatively shows that he had no basis for any claim against Citizens Bank, we can only conclude that the trial judge was correct in granting the bank's motion for summary judgment on all claims. See Stallings v. AngelicaUniform Co., 388 So.2d 942 (Ala. 1980) (summary judgment properly granted for defendant in negligence action where defendant's motion for summary judgment was supported by depositions, including that of plaintiff wherein she stated "that she did not know of any specific act of [defendant's] that caused any damage to her" and plaintiff offered nothing to contradict this evidence).
 II.
Osborn's claims against Johns, Universal Equipment, Service Concrete, and Ready Mix were tried before a jury. Osborn testified in his own behalf and called Wilson and Johns' son as adverse witnesses. When plaintiff rested, defendants Johns and Universal Equipment moved for a directed verdict. After excusing the jury, the trial judge heard arguments on this motion, then granted a directed verdict for defendants Johns and Universal on all claims. In regard to this, the judge stated:
 "Gentlemen, after careful consideration of your arguments and reviewing the pleadings, the Court is of the opinion as to the claims in the complaint as amended, with respect to the estate of J.D. Johns and Universal Equipment Rental, I think we agreed that any action on a simple oral agreement would have to defer to the written agreement. I think Plaintiff's Exhibit One, which is a sale agreement dated April 13th, 1976, and subsequently the lease entered into the 16th day of April 1976, that we must rise and fall on those instruments.
 "From the evidence the Court has heard, the exhibits that have been entered into evidence, it appears that the parties continued to function under these agreements, that there were even subsequent notes executed from Mr. Wilson to Mr. Osborn.
 "I feel that the affirmative charge is due to be granted to the estate and Universal Equipment.
 "As to the question of fraud, the Court sees no evidence of any principal/agent relationship with respect to Mr. Wilson concerning his connection with either Universal Equipment or with Mr. J.D. Johns individually at the time.
 "There is no instrument in writing by either Mr. Johns or Universal Equipment guaranteeing payment of this indebtedness, as evidenced by these instruments, primarily this one, being the sales instrument. And as I say, there were even subsequent instruments executed by Mr. Wilson evidencing these debts. As I say, there were no written guarantees from either one of those parties as far as payment goes.
 "Further, the Court would be of the opinion that as to fraud the statute of limitations [would bar the action], if there existed any fraud or conspiracy by the pleadings, by the evidence it had to have existed in 1976, at the time these agreements were entered into. By our own prior discussions, these instruments are exactly what they purport to be." *Page 110 
Plaintiff has raised several peripheral questions in relation to the directed verdict for the defendants, such as the trial court's alleged misapplication of the Dead Man's Statute, §12-21-163, Code of 1975, and whether Johns and Universal Equipment were one and the same under the alter ego doctrine. As we demonstrate below, plaintiff's claims against both Johns and Universal Equipment must fail for other reasons. Therefore, we need not address these peripheral issues.
Turning first to plaintiff's claims on the promissory note, we point out that neither Johns nor Universal Equipment was asignatory as to this document. However, plaintiff has raised two alternative theories of liability upon which he seeks to recover.
First, plaintiff argues on appeal that Wilson was acting as the agent of Johns and/or Universal Equipment in signing the document. While the complaint does contain an allegation that. "L. Alan Wilson executed said note as agent for and on the part of all defendants," this theory was not relied on at trial. In fact, while arguing against defendants' motion for directed verdict, in relation to the claim on the note, plaintiff's counsel stated:
 "With respect to the argument that we have based this case on a principal and agent basis, we have not. This case is based on — in the first place, there is a simple breach of a contract between Mr. J.D. Johns and Mr. Johnny Osborn. It may have been an oral contract, but it was a contract.
 "There are some written documents with respect to Alan Wilson. But this contract between Johnny Osborn and Mr. Johns is an oral contract." (Emphasis added.)
While a directed verdict is improper if there is a scintilla of evidence to support a theory of recovery or defense advanced by the opposing party, see Baker v. Chastain, 389 So.2d 932,934 (Ala. 1980), that theory must, of necessity, have been advanced at trial. This follows from the well-established rule that a party may not raise on appeal a theory or issue not advanced at trial. See Vaughn v. Thomas, 372 So.2d 1309, 1311
(Ala. 1979), and cases cited at 2 Ala.Dig. Appeal and Error Key No. 171 (1) (1955 and Supp. 1984). Since the agency theory was not relied upon below to provide liability on the note, we need not determine whether there existed a scintilla of evidence to support such a theory.
The second alternative theory of liability advanced by plaintiff, as indicated by the above quote, is that he had an oral contract with Johns for the sale of Service Concrete and that this contract should be considered in addition to the written contract with Wilson. During the hearing on the motion for directed verdict, the following exchange occurred:
 "THE COURT: One of your theories is that there was an oral agreement, irrespective of any fraud. I'm saying, as to that theory, as to there being an oral agreement, irrespective of fraud, I think the principle of law is that where there is a written instrument evidencing that agreement it will take precedence.
 "[Counsel for Osborn]: I think you are correct.
"THE COURT: And Mr. Osborn has admitted that was the agreement that was signed.
 "[Counsel for Osborn]: There was a written agreement. I think you are correct as to simple oral contracts." (Emphasis added.)
It is clear from this exchange that plaintiff conceded that his claim on an oral contract would be defeated by the written contract. Having agreed with the trial court that the written contract would take precedence over any alleged oral contract, plaintiff may not now assert that the court erred in entering a directed verdict against him on that ground. As this Court stated in Aetna Life Ins. Co. v. Beasley, 272 Ala. 153, 157,130 So.2d 178, 182 (1961):
 "It is a well-established doctrine that a party may not avail himself of error, if there be error, into which he has led the court; this is called invited error. . . ." *Page 111 
This principle also applies to our discussion above on plaintiff's agency theory.
The evidence concerning the alleged breach of lease was not admitted against defendants Johns and Universal Equipment as they were not signatories to the lease. Plaintiff has not contested this exclusion on appeal. There being no evidence against these defendants on the breach of lease claim, a directed verdict in their favor was proper.
In regard to the fraud claim against Johns and Universal Equipment, we are in agreement with the trial court that, if there was any fraud perpetrated upon the plaintiff, this claim is barred by the statute of limitations.
Actions for fraud are subject to a one-year statute of limitations. Section 6-2-39, Code of 1975. Although the statute does not begin to run until the fraud is discovered, § 6-2-3,
 "[f]raud is deemed to have been discovered when it ought to have been discovered. It is sufficient to begin the running of the statute of limitations that facts were known which would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry.
Jefferson County Truck Growers Association v. Tanner,341 So.2d 485, 488 (Ala. 1977) (emphasis added).
Generally, the question of when a plaintiff discovered an alleged fraud is a question for the jury and is therefore not a proper matter for directed verdict. Cf. Papastefan v. B LConstruction Co., Inc. of Mobile, 356 So.2d 158 (Ala. 1978) (holding that the time of discovery of fraud is not a proper matter for summary judgment). However, even matters which are usually considered to be jury questions can be resolved on motion for directed verdict when the evidence clearly warrants it. For example, we held in Cooper Co. v. Bryant,440 So.2d 1016 (Ala. 1983), that a directed verdict on the question of agency, which is normally a question for the jury, was proper where there was no scintilla of evidence to support the existence of an agency relationship.
There are only two situations in which a directed verdict is proper: (1) where there is no scintilla of evidence to support an element essential to the claim or (2) where there is no disputed issue of fact upon which reasonable men could differ.Caterpillar Tractor Co. v. Ford, 406 So.2d 854, 856 (Ala. 1981). A directed verdict is appropriate in the second situation only "if the facts and inferences point so strongly and overwhelmingly in one party's favor that reasonable persons could only arrive at one verdict." Bickford v. InternationalSpeedway Corp., 654 F.2d 1028, 1031 (5th Cir. 1981).
The evidence at trial clearly established the following facts:
(1) Although asserting he sold his business to Johns, it is undisputed that, in April 1976, Osborn accepted a sales contract and promissory note signed by Wilson along with a check from Universal Equipment;
(2) In late 1977 or early 1978, Osborn had his attorney acquire from the Secretary of State a list of financing statements indicating that Service Concrete's assets were encumbered by several security interests; and
(3) In 1979 and 1980, Osborn renegotiated the annual installments due on the original note with Wilson alone, at which time Wilson indicated that Service Concrete was having financial difficulty.
Even reviewing the facts in the light most favorable to Osborn, as we are required to do, Alabama Power Co. v.Robinson, 404 So.2d 22 (Ala. 1981), we are of the opinion that reasonable men could only conclude that Osborn was in possession of sufficient facts which would lead a reasonable man to investigate the possibility of fraud at least as early as January 1980 when Wilson was forced to renegotiate the yearly installment a second time. Since Osborn failed to file suit until some 16 months later, his action for fraud was time barred. *Page 112 
For the reasons stated above, we hold that the trial judge did not err in granting summary judgment on all claims in favor of defendant Citizens Bank nor in granting a directed verdict on all claims in favor of defendants Johns and Universal Equipment.
Let the judgment be affirmed.
AFFIRMED.
MADDOX, JONES, ALMON and EMBRY, JJ., concur.
[1] Although this appeal comes to us with J.D. Johns named as an appellee, we understand that the case actually proceeded against the estate of Johns.