This is a case involving the alleged misappropriation of a trade secret.
The plaintiff, Tony Mason, filed suit in the Madison County Circuit Court against Jack Daniel Distillery, Lem Motlow, Prop., *Page 132 
Inc.; its parent corporation, Brown-Forman Distillers Corporation; and Winston Randle, a sales representative of Jack Daniel Distillery. The plaintiff alleged, among other things, that the defendants had misappropriated his formula, or recipe, for a beverage known as Lynchburg Lemonade. He sought compensatory and punitive damages in the amount of $13,276,335.
An extensive trial was conducted before a jury. Following approximately four days of testimony, the trial court charged the jury that only nominal damages could be awarded to Mason in the event the jury found in his favor. The trial court refused to give Mason's requested jury charge regarding punitive damages and did not charge the jury as to such damages. The jury returned a verdict for the plaintiff in the amount of one dollar.
Mason appeals. The defendants cross-appeal, contending that the trial court erred in failing to direct a verdict in their favor.
We reverse and remand.
We will address the cross-appeal first. Before doing so, however, a general recitation of the facts is in order.
 FACTS
The plaintiff, Mason, testified that in 1980 he created a mixed drink, or beverage, which he subsequently named Lynchburg Lemonade. The beverage consisted of Jack Daniel's whiskey, Triple Sec, sweet and sour mix, and 7-Up. Mason began serving the beverage at his restaurant and lounge where it became extremely popular.
In February 1982 Mason met Winston Randle, a sales representative for Jack Daniel Distillery, who was in the restaurant and lounge. While there, Randle drank Lynchburg Lemonade and was told its recipe, though the testimony is in conflict as to who told him that recipe. Randle informed his superiors about Lynchburg Lemonade, and approximately one year later the defendants were developing a national promotion campaign for Lynchburg Lemonade.
Mason testified that he told Randle part of the recipe to Lynchburg Lemonade only because the latter promised him that the defendants would use him and his band in the advertising and promotion of the beverage. Needless to say, the defendants have not used Mason in the promotion of Lynchburg Lemonade or given him anything in return for his recipe, or formula.
 DEFENDANTS' CROSS APPEAL I
The defendants contend that Mason's recipe for Lynchburg Lemonade was not a trade secret and that the trial court should, therefore, have directed a verdict in their favor.
An Alabama appellate court has addressed the question of what constitutes a trade secret only once before, but that case,Drill Parts Service Co. v. Joy Manufacturing Co.,439 So.2d 43 (Ala. 1983), provides much guidance for the determination in this case.
In Drill Parts, the Alabama Supreme Court held that what constitutes a trade secret is a question of fact. It affirmed the determination by the trial court, which sat without a jury, that the plaintiff's engineering drawings of drill parts were trade secrets. In reaching that decision, the supreme court relied upon the extensive discussion of trade secrets in the Restatement of Torts. See Drill Parts, 439 So.2d at 48.
The Restatement provides, in pertinent part,
 "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. . . .
 ". . . An exact definition of a trade secret is not possible. Some factors to be considered in determining whether given information is one's trade secret are: (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; *Page 133 
(3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."
Restatement of Torts § 757 comment b (1939).
Applying these factors to the evidence in this case, we find that some of the factors support and some negate the conclusion that Lynchburg Lemonade was Mason's trade secret.
Mason apparently spent little time, effort, or money in concocting the recipe for Lynchburg Lemonade. He seems to have created the beverage one evening to ease a sore throat. We do note, however, that he put much effort into making the beverage an exclusive specialty of his restaurant and lounge. He first devised the name "Lynchburg Lemonade." Then he began serving the beverage in mason jars with labels proclaiming, "Lynchburg Lemonade, only at Tony Mason's, Huntsville" and advertised Lynchburg Lemonade as a house specialty. He had T-shirts printed with the name, Lynchburg Lemonade, on them, and he changed the name of his band, which performs at his restaurant and lounge, to Tony Mason and the Lynchburg Revue.
Mason testified that Lynchburg Lemonade became "the most popular drink we had." He estimated that it comprised about a third of his total sales of alcoholic drinks. Obviously, the exclusive sale of Lynchburg Lemonade was of great value to Mason. We might reasonably infer, moreover, that the beverage could also have been valuable to his competitors in the Huntsville area.
The defendants contend, however, that protecting the secrecy of the recipe for Lynchburg Lemonade, a quite important factor in determining the existence of a trade secret, was lacking. We find evidence to the contrary.
Mason testified regarding the precautions he took to protect the secrecy of Lynchburg Lemonade. He testified that he told only a few of his employees — the bartenders — the recipe. He stated that each one was specifically instructed not to tell anyone the recipe. To prevent customers from learning the recipe, the beverage was mixed in the "back" of the restaurant and lounge. Mason's testimony was largely confirmed by that of his employees and past employees.
The testimony also reflected that Mason's efforts to keep the recipe to Lynchburg Lemonade a secret were apparently successful, until Winston Randle learned the recipe. It appears that one could not order a Lynchburg Lemonade in any establishment other than that of the plaintiff.
We note that absolute secrecy is not required for the recipe for Lynchburg Lemonade to constitute a trade secret — "a substantial element of secrecy is all that is necessary to provide trade secret protection." Drill Parts, 439 So.2d at 49.
The defendants also contend that Mason's recipe was not a trade secret because it could be easily duplicated by others. The defendants put on the testimony of at least two individuals as experts in the field of bartending, or mixing alcoholic beverages. This testimony characterized Lynchburg Lemonade as a member of the Collins family of drinks, of which "there [are] dozens . . ., if not hundreds [with] [e]ssentially the same elements." At least one witness testified that he could duplicate the recipe after tasting a Lynchburg Lemonade.
Certainly, this testimony is a strong factor against the conclusion that Mason's recipe to Lynchburg Lemonade was a trade secret. We do not think, however, that this evidence in and of itself could prevent such a conclusion. Rather, this evidence should be weighed and considered along with the evidence tending to show the existence of a trade secret.
In this regard, we note that courts have protected information as a trade secret despite evidence that such information could be easily duplicated by others competent in the given field. KFC Corp. v. Marion-Kay *Page 134 Co., 620 F. Supp. 1160 (S.D.Ind. 1985); Sperry Rand Corp. v.Rothlein, 241 F. Supp. 549 (D.Conn. 1964).
Although each of the ingredients of Lynchburg Lemonade may be common to skilled bartenders,
 " '[Mason's] ability to combine these elements into a successful [beverage], like the creation of a recipe from common cooking ingredients, [may be] a trade secret entitled to protection.' As observed in Sun Dial Corporation v. Rideout, 16 N.J. 252, 257, 108 A.2d 442, 445 [1954]: '[T]he fact that every ingredient is known to the industry is not controlling for the secret may consist of the method of combining them which produces a product superior to that of competitors.' "
Allen Manufacturing Co. v. Loika, 145 Conn. 509, 515,144 A.2d 306, 309 (1958) (cited in Sperry Rand Corp.,241 F. Supp. at 560).
A motion for directed verdict should not be granted if there is a scintilla of evidence supporting an element essential to the plaintiff's claim. Osborn v. Johns, 468 So.2d 103 (Ala. 1985). Our review of the record indicates that the plaintiff did present a scintilla of evidence that his recipe, or formula, for Lynchburg Lemonade was a trade secret. The trial court, therefore, did not err in denying the defendants' motion for a directed verdict based upon the non-existence of a trade secret.
 II
The defendants also contend on cross-appeal that a directed verdict should have been granted for the individual defendant Winston Randle because the evidence failed to show that he participated in the decision to promote Lynchburg Lemonade.
As noted above, a directed verdict should not be granted if a scintilla of evidence exists in support of an essential element of the plaintiff's claim. Osborn, 468 So.2d 103.
Mason sued the defendants, including Randle, not simply for their promotion of Lynchburg Lemonade, but for their alleged misappropriation of his recipe for that beverage. The record reflects that there is a scintilla of evidence that Randle was involved in such misappropriation.
The testimony revealed that Randle learned of Lynchburg Lemonade, including its recipe, at Mason's restaurant and lounge, that soon thereafter he communicated that information to his superiors, and that the information was then reported in a company newsletter. On cross-examination Randle agreed that he had been under the impression that Mason's recipe for Lynchburg Lemonade was a secret formula.
We think that such evidence was sufficient to defeat the defendants' motion that a verdict be directed in favor of Winston Randle.
 III
The defendants' final contention on cross-appeal is that a directed verdict should have been granted in their favor because Mason sued the wrong parties.
We have a bit of difficulty in following this argument. It appears that the defendants contend that Mason should have sued Brown-Forman Corporation, rather than Brown Forman Distillers Corporation. At any rate, the defendants cite no authority in support of this contention, and we, therefore, need not address it. Dierkshiede v. McDowell Materials Corp., 491 So.2d 242
(Ala.Civ.App. 1986). See Rule 28(a)(5), Alabama Rules of Appellate Procedure.
We would note, however, that it appears to this court that the named defendants were not misled by any misnaming of them by Mason and that such would not be grounds for a directed verdict.
 PLAINTIFF'S APPEAL
Having determined that the trial court did not err in denying the defendants' motions for directed verdicts, we now address the contentions raised by the plaintiff Mason on appeal.
As noted above, the trial court instructed the jury that in the event it found in Mason's *Page 135 
favor, it could award him nominal damages only. Furthermore, the trial court refused to give the jury Mason's requested instruction regarding punitive damages and did not charge the jury as to such damages. The jury returned a verdict for Mason in the amount of one dollar.
Mason contends that the learned and distinguished trial judge erred in limiting his recovery to nominal damages because he erred both in refusing to compel certain discovery and in excluding expert testimony which would have allegedly proven his damages. He also contends that the trial court erred in refusing to allow the jury to consider an award to him of punitive damages. We will address the latter argument first.
 I
A party may recover punitive damages in Alabama if he shows that he has suffered at least nominal damages and that the acts of which he complains were committed with malice, willfulness, or wanton and reckless disregard of the rights of others.Surrency v. Harbison, 489 So.2d 1097 (Ala. 1986); Gulf AtlanticLife Insurance Co. v. Barnes, 405 So.2d 916 (Ala. 1981).
Thus, the fact that Mason may have only established that he was entitled to nominal compensatory damages has no bearing on his right to recover punitive damages, because the two types of damages need bear no relationship to each other.Surrency, 489 So.2d 1097; Roberson v. Ammons, 477 So.2d 957
(Ala. 1985).
Moreover, since the trial court submitted to the jury the matter of determining whether the defendants had misappropriated Mason's trade secret, it should have also allowed them to determine whether the defendants had committed that act with such wanton and reckless disregard of Mason's rights as would justify an award of punitive damages. Cf.Surrency, 489 So.2d at 1104-05. See also Roberson,477 So.2d 957; Hickox v. Vester Morgan, Inc., 439 So.2d 95 (Ala. 1983).
We find sufficient evidence in the record for submitting the question of punitive damages to the jury. There was testimony that Winston Randle learned the recipe for Lynchburg Lemonade while in Mason's restaurant and lounge in February 1982. He admitted on cross-examination that he considered or was under the impression that the recipe was Mason's "secret formula." Nevertheless, that same month he informed his superiors of his discovery. Randle reported about Lynchburg Lemonade and its recipe in a company newsletter dated February 28, 1982. Within a year the defendants had developed a national promotion to market the beverage.
Additionally, there was evidence that there was discussion concerning what the plaintiff wanted in return for disclosing the formula to defendants, particularly that he and his band would be used in the promotion of Lynchburg Lemonade.
We should not be understood as concluding that the plaintiff was entitled to an award of punitive damages — only that the evidence was sufficient for the jury in the first instance to consider such an award.
The defendants contend, however, that Mason waived his right to object on appeal to the trial court's failure to submit the question of punitive damages to the jury. They argue that Mason failed to preserve the objection because he did not properly object by stating to the trial court the grounds of his objection. We disagree.
The defendants correctly note that Rule 51, Alabama Rules of Civil Procedure, requires a party to object to the failure to give a written jury instruction by "stating the matter to which he objects and the grounds of his objection" in order to preserve the objection for appeal. See Bleidt v. Kantor,412 So.2d 769 (Ala. 1982); Burnett v. Martin, 405 So.2d 23 (Ala. 1981). Cf. Village Toyota Co. v. Stewart, 433 So.2d 1150 (Ala. 1983).
The purpose of this rule is to ensure that the trial court is adequately informed of its alleged error and is afforded the opportunity to correct it. Cf. Feazell v. Campbell,358 So.2d 1017 (Ala. 1978). *Page 136 
In this case Mason's counsel objected to the trial court's failure to give the requested written instruction regarding punitive damages first by identifying the instruction by number. After a brief interchange with the court, counsel then stated:
 "We also object to the court's charge concerning nominal damages. That is not a measure of damages based in any law that we have seen concerning trade secret[s], and that the best charge concerning damages in a trade secret[s] [case] has already been submitted to the court in the plaintiff's requested jury charges that were refused and already cited earlier in this exception."
We find that this objection and explanation fully meet the requirements and purpose of Rule 51, A.R.Civ.P., particularly in view of the fact that, to this court, the record reflects that the trial court understood precisely what instruction Mason's counsel was addressing.
Therefore, Mason did not waive his objection to the trial court's refusal to submit the matter of punitive damages to the jury, and as explained above, the trial court erred to reversal by its refusal to do so.
 II
Due to the above, we need not address Mason's other contentions on appeal regarding the trial court's limiting his recovery to nominal damages and its refusal to compel the defendants to produce requested sales figures or to allow his expert witness to give certain testimony to show his damages. We feel that we would be remiss, however, if we did not point out that
 "[m]ere uncertainty as to the amount will not preclude the right to recovery or prevent a decision awarding damages. All that is required is that the evidence, with as much certainty as the situation permits, lay a foundation with which the trier of fact may make a fair and reasonable estimate of the amount of damages."
Farmer v. Strother, 423 So.2d 252, 253 (Ala.Civ.App. 1982).
It appears to this court, moreover, that in failing to compel the defendants to answer the plaintiff's interrogatory and production request concerning Jack Daniel's sales figures, coupled with the refusal to allow the plaintiff's proffered expert testimony to establish his damages, the trial court may have erred, although we do not so hold. See Super Valu Stores,Inc. v. Peterson, 506 So.2d 317 (Ala. 1987).
This case is reversed and remanded to the trial court for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
BRADLEY, P.J., and INGRAM, J., concur.