BEATTY, Justice.
This is an appeal by plaintiffs, Charles Giorlando and his wife, Mary Ann Giorlan-do, from an order of the trial court overruling their motion for a new trial or, in the alternative, to alter, amend, or vacate, or for judgment notwithstanding the verdict. We affirm.
Plaintiffs brought their action against the defendants, Group Investments Corporation and Clyde Turner, its president, by filing a complaint containing two counts alleging fraudulent misrepresentation. The litigation arose out of the purchase of a residential lot by plaintiffs from the defendant corporation. Count I of plaintiffs’ complaint sets forth the basis for both counts:
“At the time of the closing of said real estate transaction, Defendants represented to plaintiffs that said real property was protected by certain restrictive covenants, and Defendants did at said time and place deliver to Plaintiffs a copy of certain restrictive covenants, and Defendants represented to Plaintiffs that the restrictive covenants contained in the instruments delivered to Plaintiffs protected said lot 42 in block 1. Plaintiffs aver that said representations made by Defendants were false, and that Defendants knew or should have known that such representations were false at the time of making same. Plaintiffs aver that on or about May 29, 1983, Thrasher Homebuilders, Inc., commenced the construction and erection of a residential dwelling house on lot 43, in block 1, Second Addition to Stonehedge Subdivision, in violation of the protective covenants as recorded in Map Book 1391, Page 928, in the Probate [Court] of Jefferson County, Alabama, and said Thrasher Homebuilders, Inc., in the placing of the structure on said lot 43 violated the setback provisions as set out in the protective covenants which Defendants represented to Plaintiffs were applicable to Plaintiffs’ said lot 42. In examining the public records in the Office of the Judge of Probate of Jefferson County, Alabama, on or about June 1, 1983, Plaintiffs learned that the lot which they purchased from Defendants (said lot 42) was not protected by protective covenants, and that the instrument containing the protective covenants which Defendants represented to be applicable to said lot 42 [was] not applicable in any way to said lot 42, and that at the time Plaintiffs purchased said lot 42 from Defendant, Group Investments Corporation, said lot 42 was not protected in any way by protective covenants and was not protected by protective covenants on June 1, 1983, and that Plaintiffs by virtue of the fraud perpetrated on them by Defendants were not able to enforce the restrictions with reference to setbacks which Defendants represented to Plaintiffs were applicable to said lot 42.”
Plaintiffs alleged that the representations were false and that plaintiffs relied upon them to their injury, and they claimed punitive damages. By amendment, plaintiffs alleged that the misrepresentations *909 applied “to said lot 42 and to all other lots within the Second Addition to Stonehedge.”
Following denial of their motion to dismiss, defendants answered, denying any misrepresentation, denying that they had failed to file restrictive covenants and averring that the residential construction in question did not violate any restrictive covenants or building lines. Defendants also pleaded the statute of limitations and es-toppel. Those defenses were also included in defendants’ amended answer to plaintiffs’ amended complaint.
Following discovery, trial ensued. At the conclusion of plaintiffs’ case, defendants moved for a directed verdict; that motion was taken under advisement by the trial court. Trial proceeded, but, following the conclusion of defendants’ case, the defendants’ motion for a directed verdict was renewed. After argument and consideration, the trial court granted the defendants’ motion for directed verdict and dismissed the plaintiffs’ case with prejudice. Thereafter, plaintiffs filed a motion for new trial, or in the alternative, to alter, amend, or vacate the judgment, or for judgment notwithstanding the verdict. That motion was overruled, and this appeal followed.
The issue, thus, is whether the trial court erred in granting defendants’ motion for a directed verdict.
Group Investments Corporation developed a residential subdivision with several additions in Jefferson County, known as “Stonehedge.” The first addition was developed during 1976-78, and a plat of that addition was recorded in the Probate Office of Jefferson County on January 13, 1977. After its development, a plat of the second addition was also recorded in that probate office in December 1978.
On January 8, 1979, Group Investments Corporation sold lot 42 of the second addition to plaintiffs, the Giorlandos. At the time of this purchase, Group Investments Corporation was selling these lots only to builders. Mr. Giorlando, a speculative and custom homebuilder, was thus able to obtain lot 42. At the time of the closing on this lot, Mr. Turner, who handled the closing for Group Investments Corporation, furnished plaintiffs with a copy of the proposed restrictive covenants on the second addition. These documents stated, among other things, that the restrictions were applicable to the first addition of the Stone-hedge subdivision, and Mr. Giorlando later acknowledged reading that portion and acknowledged an awareness of the purpose of restrictive covenants. Mr. Giorlando testified that at the closing Mr. Turner informed him that the restrictive covenants of the first addition would also be applicable to the lots in the second addition, including Mr. Giorlando’s own lot.
The Giorlando lot, lot 42, was a corner lot located at the intersection of Auman Drive and Stonehurst Drive. Immediately after their purchase, the Giorlandos began the construction of a dwelling house on lot 42, which was completed in approximately five months. They chose to locate their house on a diagonal line instead of positioning it “in line” with the dwelling houses to their left or right. (See Appendix A.)
Then, on November 1, 1979, a set of restrictive covenants specifically applicable to the second addition, and identical to those recorded on the first addition, was recorded in the Jefferson County Probate Office.
In May 1983, over three years after the Giorlandos had purchased lot 42, construction was begun on a dwelling house on lot 43 in the second addition of Stonehedge adjoining plaintiffs’ lot. Plaintiffs advised Mr. Turner, who was also head of the architectural control committee, of their concern that this construction violated the setback restriction. Following up on their inquiry, Mr. Turner met with that home-builder at the site and determined that the home was being constructed in compliance with the restrictive covenants.
Again, in September 1983, the Giorlandos complained to Mr. Turner a second time regarding a possible noncompliance with restrictive covenants as related to construction of a dwelling house on lot 45 in the second addition of Stonehedge. Mr. Turner’s subsequent investigation revealed a violation pertaining to the length of the home, and the builder was required to *910 lengthen the dwelling to conform to the covenants.
Nevertheless, on September 30, 1983, plaintiffs initiated this action, based upon allegations of fraudulent misrepresentation. At bottom, the alleged misrepresentation was that the restrictive covenants represented as protecting plaintiffs’ lot 42 did not protect it, in that the dwelling house later constructed on lot 43, though placed in violation of the “setback line,” was allowed by the defendants to remain.[1] According to plaintiffs, they had no protection from the covenants because the restrictive covenants applicable to their lot were not recorded at the time they took title, but were only filed about ten months later.
Although a review of the evidence contradicts that position and thus discloses no violation, and even affirmatively establishes that the Giorlandos were, in fact, able to successfully assert the restrictions, we do not find it necessary to explore those aspects of the case.
Plaintiffs took title to lot 42 on January 8, 1979. At that time, they were apprised and had knowledge of the restrictive covenants of record then applicable to the first addition and had knowledge that these were to be made applicable to the second addition. When, then, did the alleged misrepresentation occur? For aught that is disclosed by the facts, it occurred either at the time of the representation that the covenants would be recorded, or in the period of time between the closing and the date they actually were recorded, i.e., November 1,1979, for certainly protection under them ensued from the date they were recorded as to any violations thereafter.
“Legal fraud” is defined, as the assertion of something as true which is not true, although believed to be true, when made to be relied on and which is relied on to the injury of the party misled thereby. Rudman v. Hooks, 252 Ala. 280, 40 So.2d 866 (1949). What was not true in the operative representation here? Mr. Turner’s alleged representation was that the restrictive covenants of the first addition would protect lot 42 of the second addition. These were in fact filed several months later, on November 1, 1979, and were in fact available to plaintiffs when the construction began on lot 43.
If, on the other hand, that representation was untrue, did plaintiffs nevertheless have knowledge of facts that ought to have excited their inquiry and that, if pursued, would have led to knowledge of the unrecorded covenants? Halbrooks v. Jackson, 495 So.2d 591 (Ala.1986). That question is answered by Mr. Giorlando’s own testimony that he had in his possession a copy of the first addition covenants, which he perused. As a law-trained person and an experienced building contractor, Mr. Giorlan-do was put upon inquiry in 1979 as to whether the covenants were, in fact, recorded and did or did not provide protection for lot 42, assuming, arguendo, that the representation was untrue. Osborn v. Johns, 468 So.2d 103 (Ala.1985). There is no evidence in the record to the contrary. Yet, this action was not filed until September 30, 1983, almost four years later. Thus, the one year statute of limitations applied, Code of 1975, § 6-2-39 (now repealed), and the action was time-barred.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.
*911 APPENDIX A
[[Image here]]

. The factual complaint of the Giorlandos was that the position of the house on lot 43 was such that persons in that house would have a view of the rear of the Giorlando house on lot 42.