Cathy Yvonne STONE, Plaintiff,

v.

Hank WILLIAMS, Jr., Billie Jean Williams Berlin, Chappell Music Company, a Division of Chappell & Co., Inc., a Delaware Corporation, Aberbach Enterprises, Ltd., a New York Corporation, Acuff–Rose–Opryland Music, Inc., a Tennessee Corporation, Milene–Opryland Music, Inc., a Tennessee Corporation, Wesley H. Rose and Roy Acuff, Individually and as Trustees in Liquidation for Stockholders of Fred Rose Music, Inc. and Milene Music, Inc., Fred Rose Music, Inc., a Tennessee Corporation, and Milene Music, Inc., a Tennessee Corporation, Defendants.

No. 85 Civ. 7133 (JFK).

United States District Court,
S.D. New York.

June 12, 1991.

Rudin and Appel Beverly Hills, Cal. (Milton A. Rudin and Joseph L. Golden, of counsel) and Coblence, Warner, Hamilton & Smith, New York City (Kenneth E. Warner, of counsel), for plaintiff.

Silverman & Shulman, P.C., New York City (Alan L. Shulman, Richard H. Frank, W. Michael Milom, and Christian A. Horsnell, of counsel), for defendants Hank Williams, Jr., Wesley H. Rose, Roy Acuff, Fred Rose Music, Inc. and Milene Music, Inc.

McDermott, Will & Emery, New York City (Lawrence I. Fox and Stephen K. Rush, of counsel), for defendants Acuff–Rose–Opryland Music, Inc. and Milene–Opryland Music, Inc.

Thomas R. Levy, New York City, for defendants Billie Jean Williams Berlin Horton, Chappell Music Company and Aberbach Enterprises.

## OPINION AND ORDER

KEENAN, District Judge:

### Introduction

Before the Court are two motions for summary judgment arising out of a dispute over rights to interests in the renewal term of copyrights to the musical compositions of the late country music singer, Hank Williams, Sr. ("Williams, Sr."). The complaint of the plaintiff, the alleged illegitimate daughter of Williams, Sr., asserts two claims. First, she seeks a declaration that she is a child of Williams, Sr. within the meaning of certain copyright statutes, and that she is therefore entitled to a share in the renewal term of copyrights in Williams, Sr.'s works. Second, she asserts that certain of the defendants conspired among themselves and with non-parties to prevent her from obtaining information that would have prompted her to commence this action at an earlier time.

Defendants in this action include members of Williams, Sr.'s family as well as current and past holders of copyright interests.[1] Two separate summary judgment motions arise from this group. One motion is brought by all defendants against plaintiff. A second summary judgment motion, called the "Aberbach Motion", is brought by defendants Aberbach Enterprises, Ltd. and Billie Jean Williams Berlin against plaintiff and all other defendants.

For the reasons discussed below, the principal motion is granted. The Court declines to reach the Aberbach motion.

---

1. Defendant Hank Williams, Jr. ("Williams, Jr.") is the son of Hank Williams, Sr. ("Williams, Sr."). Defendant Billie Jean Williams Berlin is the widow of Williams, Sr. Defendant Aberbach Enterprises, Ltd. is the assignee of Billie Jean Williams Berlin's interests in copyright renewals in Williams, Sr.'s work. Defendant Chappell Music Company has a contractual relationship with defendant Aberbach Enterprises to serve as administrators of Billie Jean Williams Berlin's interests in the renewal term copyrights. Defendants Acuff–Rose–Opryland and Milene–Opryland Music are successors in interest to defendants Wesley H. Rose and Roy Acuff. Defendants Wesley H. Rose and Roy Acuff, in turn, served as trustees in liquidation of defendants Fred Rose Music, Inc. and Milene Music, Inc. Fred Rose Music, Inc. and Milene Music, Inc. were the assignees of Williams, Jr.'s interests in the copyright renewal terms in Williams, Sr.'s work.

## Background

On September 6, 1988, this Court granted defendants' motion for summary judgment and denied plaintiff's cross-motion for summary judgment. That decision, based upon the doctrine of laches, held that Stone had waited too long in bringing her claim. Stone appealed, and on April 21, 1989, the Court of Appeals for the Second Circuit affirmed this Court's decision. *See Stone v. Williams*, 873 F.2d 620 (2d Cir.1989). On August 24, 1989, the Second Circuit granted rehearing. On December 5, 1989, that court issued a new decision vacating its earlier decision, reversing this Court's dismissal on the basis of laches, and remanding the case for further proceedings. *See Stone v. Williams*, 891 F.2d 401 (2d Cir.1989).

The Second Circuit's change of heart was brought about by a decision of the Supreme Court of Alabama on an appeal brought by Stone in parallel litigation. On July 5, 1989, the Supreme Court of Alabama reversed a trial court's award of summary judgment to defendants, finding that defendants had intentionally, willfully and fraudulently concealed plaintiff's identity, existence, claim and rights as a natural child of Hank Williams, Sr. *See Stone v. Gulf American Fire and Casualty Co.*, 554 So.2d 346 (Ala.1989). That decision also set aside 1967 and 1968 Alabama state court decrees that Stone was not an heir to Williams Sr.'s estate. The decision held that defendants' fraud excused plaintiff's delay in asserting her claim, and that therefore plaintiff had asserted her rights to the estate in a timely fashion. The Second Circuit ruled that the prejudice to the defendants that prompted this Court's application of the doctrine of laches would not have existed if the defendants had revealed facts of which they had knowledge. "Consequently, the evidence of fraud, which the Alabama Supreme Court found persuasive, makes summary judgment dismissing plaintiff's claim on the grounds of laches inappropriate." *Stone v. Williams*, 891 F.2d 401, 405 (2d Cir.1989). In light of the Second Circuit's ruling, this Court now turns to another summary judgment motion, from which the issue of laches has been excluded.

## Discussion

### A. Summary Judgment

Fed.R.Civ.P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted under Rule 56 if the entire record demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When viewing the evidence, the Court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir.1990); *see Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir.1989). "Summary judgment is appropriate if ... 'no reasonable trier of fact could find in favor of the non-moving party.'" *United States v. All Right, Title & Interest in Real Property, etc.*, 901 F.2d 288, 290 (2d Cir.1990) (quoting *Murray v. National Broadcasting Co., Inc.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)). In making this determination, the district court may not resolve issues of fact; it may only ascertain whether such issues are present. *See Donahue v. Windsor Locks Bd. of Fire Cm'rs*, 834 F.2d 54, 58 (2d Cir.1987). The non-movant, in response to a properly supported motion for summary judgment, may not rest on the allegations in its pleadings, but must adduce "significant probative supporting evidence" demonstrating that a factual dispute exists. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

B. *Effect of Alabama Decision*

The Court turns first to the effect on this action of the Alabama Supreme Court's decision in *Stone v. Gulf American Fire and Casualty Co.*. Two days before plaintiff filed this action, defendants Hank Williams, Jr., Wesley Rose and Roy Acuff commenced an action in Alabama state court against plaintiff seeking a declaration that Stone was barred from establishing that she was the natural daughter of Williams, Sr. and from asserting any claim to his estate or for royalties from Williams, Sr.'s musical compositions. Plaintiff counter-claimed against Williams, Jr. to establish her status as a child of Williams, Sr. Plaintiff also filed a third-party complaint in which she alleged "an intentional, willful, fraudulent, and conspiratorial concealment from the court of her identity and potential claim to the estate of Hank Williams." *Stone v. Gulf American Fire and Casualty Co.*, 554 So.2d at 348. The defendants in the third party action were Irene Smith, the sister of Williams, Sr. who at one time served as administratrix of the estate; the law firm of Robert Stewart, Esq., the lawyer for the estate who also served for some years as executor; several fictitiously named real parties in interest; and the insurance companies serving as sureties for the estate. In the third party action, plaintiff sought to have the estate reopened, to receive her share of the estate, and to be awarded punitive damages. Plaintiff also asked that the sureties for the estate compensate her for damages not recovered against the other third-party defendants or real parties in interest.

On July 14, 1987, the Alabama Circuit Court granted summary judgment to Williams, Jr., Acuff and Rose in their action against the plaintiff, holding that Williams, Jr. was the only heir of Williams, Sr. The court, while acknowledging that Cathy Yvonne Stone was the biological daughter of Williams, Sr., held that she was not entitled to inherit from his estate. Summary judgment was also granted to the third party defendants.

Stone appealed only the decision granting summary judgment to the third party defendants. On July 5, 1989, the Alabama Supreme Court, calling this a "unique case," ruled broadly on issues not placed before it directly by Stone's appeal of the third party action. *See Stone v. Gulf American Fire and Casualty Co.*, 554 So.2d 346 (Ala.1989). The court wrote as follows:

"This Court is ever mindful of the policy concerns surrounding the finality of judgments. At the same time, we cannot ignore the pleas for relief of an innocent party who has labored under judgments procured by legal fraud and suppression, and based upon a completely erroneous view of the applicable law, at a time when she was not only a minor but had no one except a guardian ad litem fighting for her rights, and he was effectively foreclosed from establishing them."

*Id.* at 369.

The Court granted relief as follows:

"In view of all of the evidence in this case relating to concealment by the attorney and the administratrix of the estate of Stone's claims to the estate and of facts material to those claims, in addition to the fact that the state agencies involved, as well as the court itself, failed to protect her rights, we cannot but conclude that equity and justice require that the 1967 and 1968 decrees rendered in this matter be set aside, in part. Accordingly, in order to balance all of the equities involved in this case, we hereby reverse the summary judgement on Stone's third-party claim in which she asked that the estate be reopened, and we order that the 1967 and 1968 judgments rendered in this matter be set aside, in part, and that Stone is entitled to receive her proportionate share of any proceeds of the estate of her natural father, Hank Williams, including any income or interest, and of any copyright royalties, but prospectively only, from the date that she gave notice of her claim, August 5, 1985. The trial court's judgment which, insofar as it denied her request for punitive damages against the third-party defendants, is affirmed."

*Id.* at 369–70.

Because the Alabama Supreme Court decision affected his rights in the estate of

his father, Williams, Jr. sought leave to appear to seek an order to vacate and modify the July 5 opinion. *See id.* at 371. Williams, Jr. sought to have the July 5 order vacated on the grounds that he was not a party to the appeal and that accordingly his due process rights were violated when the decision on that appeal impacted upon his rights in his father's estate.[2] Williams, Jr.'s application was denied. *See id.* at 375. The Supreme Court, focussing on Stone's application in the third party action to reopen the estate, stated that the third party action was an action in rem, and accordingly exercised jurisdiction over the estate. *See id.* at 373.

Defendants argue that the Alabama Supreme Court decision is constitutionally infirm and that accordingly it should not be afforded full faith and credit by this Court. They assert that no party to this action was a party to or in privity with a party to the third party appeal in Alabama. Defendants also point out that the United States Supreme Court has held clearly that it is a violation of due process rights for a judgment to be binding on a litigant who was not a party or a privy to the earlier proceeding. *See Parklane Hosiery v. Shore,* 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552 (1979). Williams, Jr. also contends that his due process rights were violated when he was denied an opportunity to be heard after the Alabama Supreme Court had decided the appeal of the third party action in a manner that impacted upon his rights. *See* Defendants' Memorandum at 73.

Defendants argue further that the decision of the Alabama Supreme Court should not be given any res judicata effect by this Court, insisting that the Alabama Supreme Court was not a court of competent jurisdiction to overrule unappealed decisions of the trial court. *See* Defendants' Memorandum at 78. Defendants contend that the Supreme Court did not have jurisdiction over issues which the parties had not placed before it by means of appeals of the lower court orders.

Plaintiff contends that either through collateral estoppel or res judicata analysis, the Alabama Supreme Court's decisions concerning the heirship and paternity of plaintiff "preclude all defendants from relitigating those issues in this action because they were either parties to the litigation in which the decisions were made or in privity with those parties." Plaintiff's Memorandum at 7. Plaintiff argues that under Alabama law, all of the parties to this action were parties to or privy to the Alabama action. *See* Plaintiff's Memorandum at 8–9.

■■ The Court recognizes that normally it is required to give decisions of state courts the same preclusive effect as would be afforded under the laws of that state. *See Migra v. Warren City School Dist. Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); 28 U.S.C. § 1738. However, "[i]n federal actions ... a state-court judgment will not be given collateral-estoppel effect ... where 'the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." *Haring v. Prossie,* 462 U.S. 306, 313, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983). The same rule has been applied, correctly in the view of the Court, where res judicata has been invoked.[3] *See Robinson v. Arivoshi,* 753

---

**2.** Williams, Jr. was not alone in that view. Two judges dissented from the denial of his application to be heard. "[We] think the Court's action violates the constitution of this state and the Constitution of the United States in that it directly affects property rights of Williams, Jr. that were vested, if not at the time the estate of Williams, Sr. was finally closed, then surely by the entry of final judgment in his favor in his declaratory judgment action, which this Court held was the proper way to finally determine whether Stone had an interest in the estate."

*Stone v. Gulf American Fire and Casualty Co.,* 554 So.2d 346, 376.

**3.** Even if the Court had not applied the requirement of a full and fair opportunity to litigate to bar application of res judicata in this action, examination of Alabama law concerning res judicata indicates that the decision of the Alabama Supreme Court on Stone's appeal does not satisfy the requirements of Alabama law for application of res judicata. Under Alabama law, "[r]es judicata and collateral estoppel (es-

F.2d 1468 (9th Cir.1985), *vacated* 477 U.S. 902, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986), *on remand* 887 F.2d 215 (9th Cir.1989). Because the Court concludes that the defendants in this action were not afforded a full and fair opportunity to litigate the issues actually decided by the Alabama Supreme Court, it would be inappropriate and unfair to grant preclusive effect to the Alabama Supreme Court decision, and the Court declines to do so.

Several factors have led the Court to the conclusion that defendants in this action were not afforded a full and fair opportunity to litigate the issues decided by the Alabama court. First, defendants in this action were not parties to the third party action in Alabama. While some of defendants in this action were plaintiffs in the primary Alabama action, none of the defendants here were involved in the third party action that ended up before the Alabama Supreme Court.

Second, the Court is unpersuaded by plaintiff's argument that the parties in this action are bound by the Alabama Supreme Court decision by reason of being in privity with litigants in the Alabama action. As plaintiff herself points out, Alabama courts have adopted more than one concept of privity:

> "The following three definitions of privity have appeared in Alabama cases: (1) the relationship of one who is privy in blood, estate, or law; (2) the mutual or successive relationship to the same rights of property; and (3) an identity of interest in the subject matter of the litigation. Largely defining privity by example, the Alabama cases seem to resolve the question on an ad hoc basis in which the circumstances determine whether a person should be bound by or entitled to the benefits of a judgment.

> The decision usually turns on whether the relationship between the parties was close enough and whether adequate notice of the action was received by the alleged privy; this test has been bolstered by the recent tendency of the Alabama courts to analyze privity as an identity of interests."

*Hughes v. Martin,* 533 So.2d 188, 191 (Ala. 1988) (quoted at Plaintiff's Memorandum in Opposition, 7–8). As discussed above, the parties to the third party action were two insurance companies, Gulf American Fire & Casualty and American States Insurance, Irene Smith, and Stewart's law firm. The Court cannot say that the defendants in this action, whose interests in this action are the renewal term copyrights, had either a sufficiently close relationship or an identity of interests with the defendants in the third party action to be in privity with them, and therefore bound by the Supreme Court's decision. The Court is aware that Stewart served as administrator of the Williams, Sr. estate. The Court is also aware that Irene Smith served both as administratrix of the estate and Williams, Jr.'s Alabama guardian during the 1967 and 1968 proceedings. The Court is unpersuaded that either of these facts result in Stewart and Smith being in privity with Williams, Jr. for purposes of this action. Both Stewart and Smith were named as parties to the third party action because of their alleged wrongful handling of the estate and their alleged personal wrongdoing in violating their fiduciary duties to the estate and its beneficiaries. In contrast, Williams, Jr. is a defendant not because he is directly accused of personal wrongdoing, but because his rights would be affected were this Court to grant plaintiff the relief that she requests. There is no allegation that Williams, Jr. participated in the al-

---

toppel by judgment) are two separate rules or sets of rules for determining the conclusiveness of judgments." *Wheeler v. First Ala. Bank of Birmingham,* 364 So.2d 1190, 1199 (Ala.1978).

> "The elements of res judicata are as follows: (1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits are substantially identical; and (4) same cause of action present in both suits. If these

elements are present, then the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any issue which was or could have been litigated in the prior action.

*Wheeler,* 364 So.2d at 1199 (citations omitted).

In this case it is clear that the parties in this action and the parties before the Supreme Court on the third party appeal are not "substantially identical."

leged scheme that was the basis of the third party action. In view of the different interests at stake in the two actions, it would be inappropriate and unfair to use the fact that Stewart and Smith once represented the interests of Williams, Jr. or the estate to bind Williams, Jr. to the results of the Alabama Supreme Court action. Third, Williams, Jr., Acuff and Rose did not attempt to protect their interests before the Alabama Supreme Court simply because they had no reason to become involved in the appeal of a third party action to which they were not parties. The trial court had granted summary judgment in their favor on the primary action. Stone chose not to appeal that decision. Stone did appeal the adverse ruling in the third party action, which alleged fraudulent concealment by persons other than the defendants before the Court in this action. The Supreme Court's discussion of Williams, Jr.'s application for a rehearing does not relieve the Court's concern that rights of the plaintiffs in the Alabama action were affected by a decision in an action in which they had no reason to involve themselves. Accordingly, the Court concludes that it would be unfair to grant preclusive effect to the decision of the Alabama Supreme Court in Stone's appeal.

## C. *First Claim*

As mentioned above, plaintiff's third amended complaint advances two claims. In her first claim, plaintiff contends that she is entitled to an undivided one-third interest in the renewal copyrights to all musical works composed by Williams, Sr. and renewed pursuant to either the Copyright Act of 1909 or the Copyright Act of 1976. Plaintiff's first claim also demands "an accounting of all royalties, revenue, income, monies and other consideration ... derived ... from the exploitation of all musical compositions written in whole or in part by Williams, Sr." and payment of "any compensation owed to her pursuant to her undivided ownership interest in said ... compositions." Complaint at 21. Plaintiff's first claim also seeks an order directing defendants to convey to plaintiff "legal

title to her proportionate share of the renewal rights." *Id.*

Defendants assert that plaintiff's first claim for relief is barred by the three-year statute of limitations of the Copyright Act, 17 U.S.C. § 507(b). Plaintiff filed this action on September 12, 1985. Defendants insist, therefore, that in order for the suit to be within the statute of limitations period, plaintiff's cause of action must have accrued after September 12, 1982. Defendants claim that all of the possible accrual dates are before September 12, 1982, but settle on October 17, 1979 as the most likely date of accrual of plaintiff's cause of action. On that date, plaintiff met with a representative of the Alabama Department of Pensions and Security and acknowledged that her adoptive mother had told her that Williams, Sr. might be her biological father, that she knew her "identity" and that she did not want anyone to link her with Williams, Sr.. *See* Defendants' Memorandum at 23.

Plaintiff claims that she brought her action within the statute of limitations. She insists that what she is asking the Court to do is to enforce "her Congressionally-granted renewal copyright interest by forcing her co-owners to account for her proportionate share of the income they receive from those copyrights." Plaintiff's Memorandum at 12. In other words, plaintiff sees this action as "analogous to a copyright infringement claim." *Id.* at 14. Plaintiff accordingly argues that the statute of limitations begins to run anew every time she learns or should have learned of an act of infringement on her rights by the defendants. She therefore insists that each failure to account to her which took place after September 12, 1982 is an act for which she can recover in this action.

The first question to be addressed by the Court, therefore, is whether the plaintiff's claim is governed by the three-year statute of limitations of the Copyright Act of 1976, or whether plaintiff is correct in arguing that her claim is analogous to one for repeated infringements of her rights in the renewal term, each of which

starts the statute of limitations period running anew.

After careful review of the third amended complaint, relevant case law and the submissions of the parties, the Court concludes that the three-year statute of limitations of the Copyright Act applies to plaintiff's first claim. The Court rejects plaintiff's argument that, because she seeks to establish her status through a declaratory judgment, the Copyright Act statute of limitations in inapplicable. Plaintiff is seeking to establish her status as a person entitled to share in the renewal terms of the copyrights of Williams, Sr.'s songs. The complaint itself states that plaintiff's first claim "arises under the copyright laws of the United States, and more particularly, the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*" Complaint ¶ 12. While plaintiff, clearly aware that the statute of limitations threatens her action, argues that her claim is analogous to a copyright infringement claim, what she is really asking the Court for is a declaration of her rights under the Copyright Act. That being the case, the Court has no choice but to apply the clear statute of limitations provisions of the Copyright Act of 1976 to plaintiff's first claim.

Having determined that the three-year statute of limitations applies, the Court must next address when plaintiff's cause of action accrued. "Under federal principles, a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *See Cullen v. Margiotta,* 811 F.2d 698, 725 (2d Cir.) (quoting *Park v. Board of Education,* 654 F.2d 856, 859 (2d Cir.1981)), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). The Court agrees with the defendants that plaintiff's cause of action accrued on October 17, 1979. As mentioned above, that was the date on which plaintiff met with a representative of Alabama Department of Pensions and Security and acknowledged that her adoptive mother had told her that Williams, Sr. might be her father, that she knew her "identity" and that she did not want anyone to link her with Williams, Sr.. Despite plaintiff's claims that defendants withheld significant information from her,

it is clear that by October 17, 1979 plaintiff had sufficient information to suggest that she could pursue a claim. *See* Defendants' Memorandum at 23. Plaintiff, at twenty-six, was well beyond her majority at the time that she acknowledged that she might be the daughter of Williams, Sr. Five years earlier, just before she turned twenty-one, her adoptive mother informed her of the rumors concerning her paternity so that plaintiff could collect an inheritance from Lillian Stone, Williams, Sr.'s mother. *See Stone v. Williams,* 873 F.2d 620, 622 (2d Cir.1989). In 1974, she read a book on Williams, Sr. entitled "Sing a Sad Song," which mentioned the possibility that Williams, Sr. had fathered a child out of wedlock, and which discussed the possibility that the child might be entitled to a renewal interest in his songs. *See id. at 622–23. In 1980, still well within the statute of limitations period, plaintiff's adoptive father told her that he regretted withholding information from plaintiff and that he would assist her in pursuing the matter.* See id. *Nonetheless, plaintiff waited until five years later to commence this action.*

The Court having concluded that plaintiff's first claim accrued on October 17, 1979, and that accordingly plaintiff did not file this action within the statute of limitations period, this claim must be dismissed unless the Court accepts plaintiff's argument that the statute of limitations defense is not available to the defendants in this action. Plaintiff argues that defendants are precluded from using the defense because of their participation in the alleged fraud and their prior, superior knowledge of the existence of the plaintiff and her rights.

The Court concludes that the statute of limitations defense is available to the defendants in this situation. Even if deliberate action by some or all of the defendants prevented plaintiff from pursuing this action at one time, there was nothing to stop her after October of 1979 at the latest, and it was at that point that the statute of limitations began to run. *See Cullen,* 811 F.2d at 725.

Plaintiff cites two cases in support of her argument that the statute of limitations defense is not available to the defendants because of the fraud allegedly perpetrated on the Alabama state court and because of their prior, superior knowledge of the plaintiff and her rights. Both are distinguishable from this case. The first, *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), held that a equitable suit by a class of creditors of a joint stock land bank to enforce liability imposed on the shareholders by a federal statute was not barred by a state statute of limitations. The Supreme Court in that case did not rule that the defense of statute of limitations is never available to defendants who undertake to conceal plaintiff's claims by means of fraud. In fact, the Court announced that it had adopted the rule that "where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'" *Holmberg, supra,* 327 U.S. at 397, 66 S.Ct. at 585 (quoting *Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874)).

The second case cited by plaintiff is no more supportive of her argument than is *Holmberg v. Armbrecht.* In *Barrett v. United States,* 689 F.2d 324 (2d Cir.1982), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 the Court of Appeals for the Second Circuit examined the application of the two-year statute of limitations of the Federal Torts Claims Act to a suit brought by the survivors of a mental patient who had been involuntarily used as a subject in chemical warfare experimentation. The patient died in 1953 as a result of the experiments and the Army actively concealed the fact for many years. The Second Circuit considered whether the Army's actions interfered with the ability of the patients' survivors to sue so as to prevent the statute of limitations from running. The Court held that in such a situation the two-year FTCA statute of limitations did not begin to run "until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." *Barrett,* 689 F.2d at 327. Applied to the facts of this case, *Barrett,* like *Holmberg,* supports the Court's conclusion that the statute of limitations in this action began to run on October 17, 1979 and that it is available to the defendants as a defense.

For these reasons, the Court grants defendants' motion for summary judgment on the first count of plaintiff's complaint.

## D. *Second Claim*

Plaintiff's second claim alleges that defendants Milene–Opryland Music, Rose, Acuff, Fred Rose Music, Inc., Milene Music, Inc. and Acuff–Rose–Opryland Music, Inc. conspired with Irene Smith and Robert B. Stewart. Irene Stewart is the sister of Williams, Sr. After the death of Lillian Williams Stone in 1955, Irene Smith took over as administratrix of Williams, Sr.'s estate. Smith continued to act as administratrix of the estate until 1969. Robert B. Stewart served as attorney for the Williams, Sr. estate from 1953 to 1975. He took over as administrator from Irene Smith in 1969.

Plaintiff's second claim sets out the details and goals of the alleged conspiracy as follows:

33. Smith and Stewart knew of plaintiff since her birth on January 6, 1953 and knew, since that time, that she had claims and rights as the natural child of Williams Sr. While acting in their respective capacities as administrator and/or attorney for the estate, Smith and Stewart had a confidential relationship with plaintiff; they were charged with the highest degree of fiduciary duty to plaintiff; they were obligated to fully advise her or her appropriate representatives of all material facts and theories which could affect her claims, rights and interests arising from the fact that she is the natural daughter of Williams Sr.; they were required to to [sic] take whatever measures were necessary to protect her interest; and they were prohibited

from placing the interest of another potential heir over her interest.

34. At all times alleged herein, defendants ARO Music, MOM Music, Rose Acuff, Fred Rose and Milene (hereinafter "Co-conspirator Defendants"), knew or had reason to know that plaintiff was the natural daughter of Williams Sr. and Williams Jr.'s half-sister, that Smith and Stewart were the administrators and/or the attorney for the estate, that Smith and Stewart had a confidential and fiduciary relationship with plaintiff and that Smith and Stewart were charged with the highest degree of fiduciary duty to plaintiff.

35. Co-conspirator Defendants, Smith and Stewart knew, or had reason to know, that the Alabama state Court, in making determinations regarding the estate, would depend in great measure on the integrity and thoroughness of Stewart and would depend on the facts and issues presented to the Court by Stewart.

36. Commencing at some time in at least 1960 or 1961, and continuing thereafter as more specifically alleged hereinbelow, and with full knowledge of the facts alleged hereinabove at paragraphs 31, 32, 33, and 35, Co-conspirator Defendants, Smith and Stewart knowingly and willfully conspired and agreed among themselves, and each of them, to unlawfully exploit and misuse Stewart and Smith's fiduciary relationship with plaintiff to (1) prevent plaintiff from perfecting her interest in the Williams, Sr. renewal copyrights and (2) to permit Co-conspirator Defendants to misappropriate plaintiff's interest in the Williams Sr. renewal copyrights for their sole and exclusive benefit.

In sum, plaintiff charges that the defendants named in this count conspired with Smith and Stewart, who are not named defendants, to prevent plaintiff from obtaining any benefit to which she might be entitled by preventing disclosure concerning plaintiff "to the Alabama courts, Drayton Hamilton, plaintiff's adoptive parents and plaintiff" of certain facts concerning the plaintiff's existence and possible rights. Plaintiff's Memorandum at 26.

Defendants argue that no such conspiracy could possibly have existed because plaintiff or her guardians knew "at all relevant times" that plaintiff was possibly Williams, Sr.'s daughter. Defendant's Memorandum at 81. Defendants also contend that plaintiff's second cause of action is barred as a matter of law, because there is no independent cause of action for conspiracy under Alabama law. Defendants argue that because there is no allegation that they made affirmative misrepresentations to the plaintiff, and because they had no affirmative duty to disclose facts of which they were aware concerning plaintiff's paternity, plaintiff has failed to state a claim against them. Defendants point out finally that defendants Acuff–Rose–Opryland and Milene–Opryland Music were not even incorporated until 1985, twenty-five years after the commencement of the alleged conspiracy. Defendants argue that these two corporations did not assume any of the tort liabilities of their predecessors, and that accordingly plaintiff cannot state a claim as to them.

Plaintiff argues that it would be inappropriate to grant defendants' motion for summary judgment on Count II, insisting that there are material questions of fact to be resolved concerning defendants' liability. Plaintiff contends that defendants "conspired to deprive plaintiff of her renewal rights even though they owed a fiduciary duty to her and held her share of income in trust for her." Plaintiff's Memorandum at 27.

■ The parties agree that under Alabama law, where there is an allegation of participation in a civil conspiracy, the plaintiff's cause of action arises not from the conspiracy itself, but from the wrong alleged to be the object of the conspiracy. *See Ellis v. Zuck*, 409 F.Supp. 1151, 1159 (N.D.Ala.1976), *aff'd*, 546 F.2d 643 (5th Cir. 1977) (applying Alabama law); *see also* Plaintiff's Memorandum at 27; Defendants' Memorandum at 82. In *Purcell Co. Inc. v. Spriggs Enterprises*, 431 So.2d 515 (Ala.1983), the Alabama Supreme Court stated that " '[w]here civil liability for a

conspiracy is sought to be enforced, the conspiracy itself furnishes no cause of action. This gist of the action is not the conspiracy alleged but the wrong committed.' " *Purcell,* 431 So.2d at 522 (*quoting O'Dell v. State ex rel. Patterson,* 270 Ala. 236, 240, 117 So.2d 164, 168 (1959)). The *Purcell* court went on to hold that because there had been a failure to establish a prima facie case for the underlying tort, "the conspiracy claim must also fail because there is no 'actionable wrong' to support the later theory." *Purcell,* 431 So.2d at 522 (*quoting Griese–Traylor Corp v. First National Bank,* 572 F.2d 1039 (5th Cir.1978)).

■ The defendants in the second count argue that plaintiff's conspiracy claim must fail as a matter of law because, as was the case in *Purcell,* the plaintiff has failed to state a claim for the underlying tort which plaintiff alleges supports the conspiracy charge. Accordingly, to decide whether plaintiff's conspiracy claim is to be dismissed for failure to state a claim, the Court must address defendants' argument that they could not, as a matter of law, have been guilty of the underlying wrongdoing of which they are accused.

As mentioned above, the wrong allegedly underlying the conspiracy is that defendants withheld information concerning plaintiff's existence and paternity in order to prevent her from asserting her claims of entitlement to benefits from the estate of Williams, Sr. or from the renewal of the copyrights in his works. Alabama recognizes a cause of action for fraudulent suppression of a material fact. *See* Ala.Code § 6–5–102 (1975) ("Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation may arise from the confidential relations of the parties or from the particular circumstances of the case."). Courts applying Alabama law have found several factors necessary to state a claim for fraudulent suppression of a material fact. First, "mere silence is not actionable unless there is a duty to disclose material facts." *Bank of Red Bay v. King,* 482 So.2d 274, 284 (quoting *Holdbrooks v. Cen-*

*tral Bank of Alabama, N.A.,* 435 So.2d 1250 (Ala.1983)). Second, defendants can be held liable only for concealing facts of which they had knowledge. *See Lee v. United Fed. Savings & Loan Ass'n,* 466 So.2d 131, 135 (Ala.1985) (*quoting Harrell v. Dodson,* 398 So.2d 272, 276 (Ala.1981)). Third, the fact alleged to have been suppressed must have been material. *See Bank of Red Bay,* 482 So.2d at 285. Finally, a complaint for fraudulent suppression of material facts must allege damages. *See Berkel & Co. Contractors v. Providence Hospital,* 454 So.2d 496, 506 (Ala. 1984).

The Court first addresses whether defendants were under any duty to reveal whatever they knew. Plaintiff claims that defendants did have such a duty to disclose. According to the plaintiff,

> "[a] party has a duty to disclose 'if a confidential or fiduciary relationship' exists and if the one party has a particular knowledge or expertise not shared by the other party, thereby creating unequal bargaining positions. The defendants named in this claim conspired to deprive plaintiff of her renewal rights even though they owed a fiduciary duty to her and held her share of the income in trust for her."

Plaintiff's Memorandum at 27 (citations omitted).

Defendants argue that "plaintiff cannot point to any factual basis for the alleged co-conspirator's duty to disclose." Defendants' Memorandum at 84. The Court agrees. Plaintiff has presented no facts or arguments which support her vague assertion that the defendants in the second claim had a fiduciary duty to her. See *Bettis v. Bettis,* 475 So.2d 847, 851 (Ala.1985) (affirming grant of summary judgment in fraudulent concealment case where plaintiff "failed to prove defendant owed them any legal duty under the circumstances."). In fact, the bulk of plaintiff's argument on this point, which appears at pages 28–29 of her memorandum, discusses not the basis of the plaintiff's arguments concerning the defendants' duties, but instead the defendants' silence, and argues that there exist

genuine issues of fact concerning whether the defendants joined in a conspiracy. Absent a duty to disclose however, the law is clear that defendants' silence was not wrongful. *See Bank of Red Bay v. King,* 482 So.2d 274, 284 (quoting *Holdbrooks v. Central Bank of Alabama, N.A.,* 435 So.2d 1250 (Ala.1983)).

Furthermore, even assuming that Stewart and Smith were in fact found to have perpetrated some fraud on the plaintiff or on the Alabama courts, plaintiff has failed to allege that defendants took any action to further the purposes of the alleged conspiracy. Instead, plaintiff's allegations are limited to assertions that the defendants were advised of Stewart and Smith's efforts to prevent plaintiff and the court from discovering her identity and rights. Absent a duty that would render their silence wrongful, the defendants could not have participated in a conspiracy to advance Stewart and Smith's goals simply by remaining silent.

For these reasons, defendants' motion for summary judgment is granted as to the second count of plaintiff's complaint.

### E. *Aberbach Defendants' Motion*

In this motion, defendants Billie Jean Williams Berlin, Aberbach Enterprises and Chappell Music Company have asked the Court to determine the size of plaintiff's share in the copyright renewal interests. The Court, however, has granted summary judgement for defendants on plaintiff's complaint. Accordingly, there is no need for the Court to resolve the question of the extent of plaintiff's interest in the copyright renewals.

### *Conclusion*

For the reasons set forth above, defendants' motion for summary judgment on both counts of plaintiff's complaint is granted. In light of its disposition of the principal summary judgment motion, the Court declines to reach the Aberbach defendants' motion. This action is ordered removed from the active docket of this Court.

SO ORDERED.